[Civ. No. 2754. Fourth Dist. July 30, 1941.]

HELEN WALKER WHITCOMB, Respondent, v. KATHERINE E. EMERSON et al., Appellants.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Appellants.

Loeb & Loeb and Herman F. Selvin for Respondent.

KELLY, J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiff enjoining the defendants, their deputies, agents and successors in office, from enforcing or executing the provisions of an act of the legislature of the State of California, approved May 31, 1927, known as the "Act Concerning Cosmetology," (Stats. 1927, page 1711) or of any amendment to said act insofar as the same prevents or impairs the practice of the plaintiff from engaging in the operation of massaging, stimulating or beautifying the face, neck and upper part of the human body by means of the hands and use of oil lotions, upon the ground or for the reason that plaintiff has not had issued to her a certificate of registration or license to practice cosmetology, or upon the ground or for the reason that the plaintiff has violated, or is claimed to have violated, any of the provisions of said act or of any amendment thereto.

The defendants named in the complaint are the members of the State Board of Cosmetology of the State of California; the Director of the Department of Professional and Vocational Standards; the District Attorney of Los Angeles County, the Sheriff of Los Angeles County, and the Chief of Police of Beverly Hills.

The complaint alleges that the plaintiff, the respondent here, is an adult over the age of twenty-one years and that she is a resident of Beverly Hills, Los Angeles County, and has been such since 1936; that she is and has been a person of good moral character, temperate habits and with an education equivalent to the completion of the ninth grade of the public schools of California; that for three years immediately preceding the commencement of this action, in Los Angeles County, California, and for thirteen years next immediately prior thereto, in Boston, Massachusetts, the plaintiff engaged

in the practice of that branch or occupation of cosmetology consisting only of massaging, stimulating and beautifying the face, neck and upper part of the human body by means of the hands and use of an oil lotion, and that she had developed a successful and substantial practice and clientele in the pursuit of such occupation and had become well and favorably known as a practitioner of that branch of cosmetology described as being practiced by her; that during all of the time in which the plaintiff engaged in said described branch of cosmetology she has always earned and is now earning her livelihood therefrom and that she is well and favorably known within the county of Los Angeles as a practitioner of the arts described; that she has never engaged in nor practiced, and has no desire nor intention ever to practice any branch or occupation of cosmetology, or any branch of the occupation of hair dresser and cosmetician or cosmetologist other than that branch which she does practice as described. That she has been and is proficient and fully versed in the principles of practice of that branch of cosmetology practiced by her as aforesaid and is fully capable of passing and would pass any reasonable examination and practical demonstration designed to test her fitness and aptitude to practice and engage in such branch of cosmetology, but that she never studied nor has been trained in, and is not proficient in, and could not pass an examination in the other so-called branches of cosmetology referred to and defined in the cosmetology act, or in any other of the various branches thereof, in which practical demonstrations are included in the examination for a certificate of registration and license to practice as a cosmetologist, and particularly in the branches thereof referred to in said act as shampooing the hair, hair dressing, marcel waving, water waving, hair coloring, manicuring and the use of mechanical apparatus or electricity; that a knowledge of any of said last mentioned branches is not necessary to, nor are any of them used or practiced in, the practice or performance of that branch of cosmetology practiced by her as aforesaid.

It is then alleged that on or about February 17, 1939, the plaintiff was notified in writing by the Board of Cosmetology that she had violated the rules of said board for the regulation of cosmetological establishments and the provisions of said act, and that she was ordered by the board immediately to cease performing any act of cosmetology until she had been

licensed by said board; that she then offered and is now ready, willing and able to submit to an examination designed to test her fitness and aptitude to practice the branch of cosmetology now being practiced by her as described, and that she has requested the board to conduct an examination therefor and upon the successful passage thereof by her to issue to her a certificate of registration or license to practice said branch of cosmetology only, but that the board has refused and still refuses to do so, and has informed the plaintiff that a certificate of registration and license to practice cosmetology, or any branch thereof, or to engage in the occupation or practice of a cosmetologist will be issued to her only if she passes an examination as provided by section eight of said Act Concerning Cosmetology as amended, including an examination and practical demonstration in the subject or branches of cosmetology such as shampooing the hair, hair dressing, marcel waving, water waving, hair coloring, manicuring and the use of mechanical apparatus or electricity; that if she continues to practice or engage in that branch of cosmetology heretofore and now practiced by her as aforesaid, said board will report her conduct to the district attorney of Los Angeles County as a violation of said act, and that said officer will cause her to be arrested by the Sheriff of Los Angeles County and the Chief of Police of Beverly Hills, and will prosecute and seek to convict her of the crime of conducting a cosmetological establishment and of practicing cosmetology without a license; that she will thereby be deprived of her means of livelihood and the only opportunity and privilege of engaging freely in her profession and business; that the defendants have threatened to, and unless restrained will seek to enforce against her the various provisions of the Act Concerning Cosmetology and force her out of her practice as described. That by reason thereof the plaintiff is being and will be deprived of her property and liberty without due process of law, and the equal protection of law, contrary to the Constitutions of the United States and of the State of California. That unless the defendants are restrained from enforcing the Act Concerning Cosmetology the plaintiff will suffer irreparable loss and damage in that she will be compelled either to abandon her profession or in the alternative take the risk of being fined and imprisoned for violations of the act.

The answer put in issue all of the material allegations of the complaint. The cause having been tried and submitted the trial court filed findings of fact and conclusions of law substantially sustaining the allegations of the complaint and entered judgment for the plaintiff.

At the trial the plaintiff testified that her work consists of molding the face by manipulation of the muscles and tissue for the purpose of giving it proportion and bringing "it back to life." She uses no instruments in the course of her work but uses an oil lotion to make the customer feel more comfortable. She has been engaged in her present occupation for sixteen years, the last three years in Los Angeles; she does no hair or scalp work, manicuring, shampooing, electrolysis, hair removing, hair cutting, hair brushing or trimming; she has never done any work of such kind and has no training or schooling therein; she does no work of any sort in connection with the human body, other than the work of massaging the face and does no work upon the hair in any way;—no marcel waving, water waving or hair coloring. Her operations are performed with the object in view of giving "symmetry and proportion" to the face and to "keep it firm and youthful." That if the face has become wrinkled, her object is to get rid of the fatty tissue under the skin with the hope that the personal appearance of her customer will be enhanced. Her work consists of massage of the face alone, not of the neck or any portion of the back or arms. It extends to the temple vein at a point opposite the eye and on the front of the forehead at a line that would be formed by the prolongation of the eyebrows. In working upon a customer she places a thin band around the head just over the hair line to keep the hair back from the portion of the face upon which she is working. She has never found it necessary, upon removing that band, to comb the hair of the customer; that upon removal of the band, if the hair is mussed up, the customer combs it herself. She has about thirty to thirty-five customers a week and charges $10 for a single treatment; her clientele consists of people of considerable means from the wealthier districts of Los Angeles and the moving picture colony.

Several witnesses testified on behalf of the defendants to the effect that they were engaged in the work of cosmeticians or in the management of establishments engaged in such work.

That in their work they do not give exclusive attention to facial massage but associate the same with hairdressing and various other branches of the cosmetician's art. That rarely does a customer desire the limited treatment which the plaintiff practices and that they would find it impossible to profitably conduct an establishment limited to facial massage and that ordinarily attention must be given to the hair by brushing or combing after the administration of facial manipulation.

The Act Concerning Cosmetology, as it read when this action was brought and was determined, provided in section 3 thereof, among other things, that every person who shall "conduct or operate a cosmetological establishment, school of cosmetology, hairdressing shop, beauty parlor, or any other place of business in which any one or any combination of the occupations of a hairdresser and cosmetician, or cosmetologist, are taught or practiced, except the branch of manicuring as practiced in a barber shop, and every person who shall engage in, or attempt to engage in the practice of cosmetology, or any branch or branches thereof, without a license therefor, issued as herein provided, by the state board of cosmetology, shall be guilty of a misdemeanor. . . . "

"Cosmetology" is defined in section 2 (b) of the statute as: "Arranging, dressing, curling, waving, cleansing, cutting, singeing, bleaching, tinting, coloring, straightening, dyeing, brushing, beautifying or otherwise treating by any means, the hair of any person; massaging, cleaning or stimulating the scalp, face, neck, arms, bust or upper part of the human body, by means of the hands, devices, apparatus, or appliances with or without the use of cosmetic preparations, antiseptics, tonics, lotions, or creams; beautifying the face, neck, arms, bust or upper part of the human body, by use of cosmetic preparations, antiseptics, tonics, lotions or creams. Removing superfluous hair from the body of any person by the use of electrolysis, or by the use of depilatories, or by the use of tweezers, chemicals, preparations, or by the use of devices or appliances of any kind or description except by the use of light waves, commonly known as rays; cutting, trimming, polishing, tinting, coloring, cleansing or manicuring the nails of any person, and massaging, cleansing, treating, or beautifying the hands of any person."

Hairdresser and cosmetician or cosmetologist is defined in section 2 (c) of the act as: "A person who engages in the practice of cosmetology or in a majority of the branches thereof, except the branch of electrolysis."

Cosmetological establishment is defined in section 2 (g) as: "Any premises, building or part of a building, whereon or wherein any branch or any combination of branches of cosmetology, or the occupation of a hairdresser and cosmetician or cosmetologist, except the branch of manicuring as practiced in barber shops, are practiced."

The Act Concerning Cosmetology provides for the issuance of licenses for "Hairdressers and Cosmeticians" as well as for other branches of the arts described in the act.

It is apparent that the method of operations by plaintiff, as alleged in the complaint, and as found by the trial court, constitutes the practice of "cosmetology" as defined in the act and that therefore the plaintiff is a "hairdresser and cosmetician or cosmetologist" as defined in the statute and also that her business consists of conducting a "cosmetological establishment." It is further apparent that if the act is enforced against the plaintiff she is guilty of a misdemeanor, if unlicensed.

(1) The testimony of witnesses on behalf of the defendants is of little value in view of the fact that the trial court by its findings indicated that it preferred the testimony of the plaintiff and accepted the same at its face value. It is not the function of this tribunal to weigh the evidence or express a preference for conflicting testimony or conflicting inferences or theories. There being substantial evidence sustaining the findings of the lower court the parties are concluded. We must, therefore, conclusively assume that the plaintiff exclusively engaged in the art of manipulation of the customer's face, as she testified.

(2) The lower court found that a knowledge of the operations included within the definition of "cosmetology" and required to be included in the examination for "hairdresser and cosmetician or cosmetologist," in addition to those practices indulged in by respondent, were not necessary to nor were any of them used or practiced in or required to be used or practiced in the practice or performance of the occupation practiced by respondent, and that:

"The requirements of said Act Concerning Cosmetology as amended, that persons desiring to practice only the occupation practiced by plaintiff, must be trained and experienced in, and pass examinations testing their proficiency and aptitude in the various branches of cosmetology other than massaging, and particularly in the branches referred to in said Act as shampooing the hair, hairdressing, marcel waving, water waving, hair coloring, manicuring, and the use of mechanical apparatus and electricity, are, and each of them is, unreasonable and arbitrary; and said provisions set up and prescribe standards having no reasonable relation to public health, morals or welfare, or to the purpose of protecting the public against incompetent, untrained or inefficient masseurs and masseuses. The occupation of massaging, practiced by plaintiff as aforesaid, is an independent occupation, having no inherent, fundamental or necessary relation to the occupations of waving, coloring and shampooing the hair, manicuring or electrolysis; and in the practice of said occupation of massaging, a knowledge of, or proficiency in, the occupations of waving, coloring and shampooing the hair, manicuring or electrolysis, is not necessary or reasonably required."

The trial court also found that: "Plaintiff has offered and is ready, willing and able to submit to an examination designed to test her fitness and aptitude to practice the occupation now practiced by her, and has requested the said Board to conduct such an examination and upon successful passage thereof by plaintiff to issue to her a certificate of registration and license to practice her said occupation; but the said Board has refused and still refuses so to do and has informed plaintiff that a certificate of registration and license to practice cosmetology, or any of the branches specified in said Act as included therein, or to engage in the practice or occupation of a cosmetologist, will be issued to her only if she passes an examination as provided by section 8 of said Act, including an examination and practical demonstrations in shampooing the hair, hairdressing, marcel waving, water waving, hair coloring, manicuring, and the use of mechanical apparatus and electricity."

The trial court concluded that, as contended by the plaintiff, she "has been, is, and unless the enforcement against her of the Act Concerning Cosmetology is enjoined and restrained, will continue to be: (a) dèprived of her property and liberty

without due process of law, contrary to the provisions of section 1 of Article XIV of Amendments to the Constitution of the United States, and of sections 1 and 13 of Article I of the Constitution of the State of California; and, (b) denied the equal protection of the laws, contrary to the provisions of section 1 of Article XIV of Amendments to the Constitution of the United States, and sections 11 and 21 of Article I of the Constitution of the State of California.''

Apparently then, the sole question remaining for decision is whether or not plaintiff is deprived of, or in danger of being deprived of, her constitutional rights as above defined.

(3) It is not contended by the plaintiff, and the trial court did not find, that reasonable requirements of training, experience and competency may not be imposed by the state as a condition to the practice of a business, occupation or profession. Neither is it contended nor found that the Act Concerning Cosmetology is generally or in all respects unconstitutional. The plaintiff does contend, and the court below held, that in imposing requirements of training, experience and competency, the state cannot constitutionally impose arbitrary or unreasonable conditions precedent to the issuance of a license having no relation to the regulated calling and that the Act Concerning Cosmetology, when applied to the occupation of facial massage as practiced by the plaintiff, does impose arbitrary and unreasonable conditions by requiring those engaged in facial massaging to be trained and experienced in, and to pass an examination in, subjects separate from and unrelated to massaging the face, such as shampooing, waving, coloring, dressing and care of the hair. We apprehend that it cannot be questioned that the state may, by appropriate legislation, require training and examination for an operator's license in each and every activity defined in the Act Concerning Cosmetology. It is questioned, however, whether the state has the power, in view of the constitutional provisions above noted, to group, by statute, all of the activities named in the act and require an operator or the proprietor of an establishment to pass an examination in all of the arts specified before qualifying for the issuance of a license, and of penalizing the practice of an unlicensed operator confining his or her activities to one alone of the acts to the exclusion of all others.

■ In approaching the problem here involved we deem these truths to be established by reason and by law. Those things which are of themselves evil may be prohibited. Those things which, though not evil in themselves, if practiced by those not adequately trained therein by education and experience, or by those not morally qualified or of sufficient age or discretion, may endanger the health, safety, morals or general welfare of the people, may not be prohibited but may be controlled by reasonable regulation.

■ The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with, or abridgment of, such right is an invasion thereof and a restriction of the liberty of the citizen as guaranteed by the Constitution. (*Yee Gee* v. *San Francisco*, 235 Fed. 757.)

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. . . . The interest, or, as it is sometimes termed, the 'estate', acquired in them [occupations]—that is, the right to continue their prosecution—is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as deception and fraud. As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate

to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation." (*Dent* v. *West Virginia,* 129 U. S. 114, [9 Sup. Ct. 231, 32 L. Ed. 623].)

■ Unreasonable restrictions on personal liberty are void. (*Ex parte Miller,* 162 Cal. 687 [124 Pac. 427] ; *Ex parte Dart,* 172 Cal. 47 [155 Pac. 63, Ann. Cas. 1917D, 1127, L. R. A. 1916D, 905] ; *Ex parte Hall,* 50 Cal. App. 786 [195 Pac. 975].)

■ The power to regulate is not the power to suppress and business cannot be destroyed or people prohibited from laboring under the guise of regulation. (*Curtis* v. *Los Angeles,* 172 Cal. 230 [156 Pac. 462].)

"The right to labor, to pursue any lawful employment in a lawful manner, and to make lawful contracts are rights enjoyed by the citizen under the protection of the Constitution of the United States." (12 C. J. 1122, sec. 841.) (*Lochner* v. *New York,* 198 U. S. 45 [25 Sup. Ct. 539, 49 L. Ed. 937] ; *Ex parte Hutchinson,* 137 Fed. 949; *The Stockton Laundry Case,* 26 Fed. 611.)

We must assume that the desire and inclination of mankind to adorn and beautify the person is not wicked nor evil of itself. From earliest ages the practice of personal adornment, particularly by the fair sex, has been indulged, as evidenced by the ancient Egyptian tombs, and this with the approval and even the applause of the sterner sex. The noblest epic in all literature glorifies the deeds of heroes on the windy plains of Troy, contending for the glamorous Helen of Sparta. "The face that launched a thousand ships and burned the topmost towers of Ilion." History has collected and recorded that the immortal marshal of the unconquerable legions lowered the eagle standards and bent the proud Roman knee before the throne of Egypt's storied queen.

> "Ah, has not such a story from of old,
> Down man's successive generations rolled."

Following the ancient tradition of her sex the modern dame or damsel, viewing with dismay the incipient extra chin or tiny crowfoot, marking the plodding progress of Father Time, is impelled to erect bunkers of defense armed to withstand the

inevitable assault. All of this is lawful and within the realm of inalienable rights classically defined as the "pursuit of happiness." If, then, it is lawful for all to endeavor to preserve or to regain those treasured charms of yesteryear, it must also fall within the legal protection of the constitutional guarantees for those skilled in appropriate arts to serve the needs of those who seek the enhancement or preservation of personal beauty, subject only to the right of the state to impose such reasonable regulations as will protect the health, safety, morals and general welfare of the public. ██ Is then the regulation prescribed by the challenged act unreasonable? In approaching this problem we cannot assume that the legislature, either wilfully or ignorantly, intended to violate the organic law of either the United States or of the State of California. Before we may declare the act unconstitutional in any of its aspects, all reasonable doubts must be dispelled. We begin our approach with a strong presumption of the constitutionality of the act. (*People* v. *Southern Pacific Co.*, 209 Cal. 578 [290 Pac. 25]; *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal. (2d) 620 [91 Pac. (2d) 577].) We must also keep in mind the sanctity of the plaintiff's right to engage in any lawful employment; a right which cannot be abrogated or imperiled by reasons of public economy or of convenience. So clear is the voice of the people as expressed in their Constitutions that no agents or agencies of government can ignore the popular mandate. In reading the act, the thought occurs that it may be that the numerous branches of cosmetology therein defined are grouped and embraced as a needed qualification for a license to practice one because such would facilitate the supervision of a single board or the enforcement of the act in a more expeditious manner. The thought also occurs that the act as written affords a special protection to the larger establishments in which cosmetology is taught or practiced in all its branches. We must keep in mind that the whole vital quality of constitutional government, from Magna Charta on, proceeds from the impulse and desire of the people to protect the weak against the strong and to secure the rights of feeble minorities. The appellants compare the prescribed qualifications for a license with those prescribed for licenses to practice either law or medicine. The analogies are not valid. It is true that the doctor who intends to practice a single branch of his profession must

study, subject himself to an examination in, and be somewhat experienced in, numerous branches of the science of medicine. The doctor, however, diagnoses and treats, not the sickness, but the sick patient. To fully understand the patient from a medical standpoint, all branches of his science may be needed by the practitioner of a specialty. Before he assumes to treat within his specialty, the sick patient must be diagnosed, and to do this the practitioner must know something of the symptoms of the various diseases which might otherwise be confused with the one suspected. The lawyer is not so much concerned with statutory definitions as with the subjective mind, trained and cultured to view all the broad aspects of the science of justice which constitute a single homogeneous system. The lawyer frequently should, and sometimes does, reason by analogy and this is possible only when many, if not indeed all, of the branches of his science have been studied. It might as well be argued that the high degree of academic culture required by our law schools or by the bars of the several states before matriculation or admission to practice is useless because the lawyer, intending to specialize, needs only to know the substantive law and procedure of that department in which he intends to practice. It cannot be said that the learned professions supply a fair analogy in analyzing the qualifications conditional to the issuance of a license to practice cosmetology.

The invalidity of a statute may be shown by things which will be judicially noticed. (*Weaver* v. *Palmer Bros Co.,* 270 U. S. 402 [46 Sup. Ct. 320, 70 L. Ed. 654].) We are empowered, in determining the constitutionality of the questioned act, to notice judicially the facts disclosing the varying types of business usually followed, the general character of such businesses and the ordinary methods of conducting them. (*Ogilvie* v. *Aetna Life Ins. Co.,* 189 Cal. 406 [209 Pac. 26, 26 A. L. R. 116] ; *Abbey Land etc. Co.* v. *San Mateo,* 167 Cal. 434, 437 [139 Pac. 1068, Ann. Cas. 1915C, 804, 52 L. R. A. (N. S.) 408] ; *Nicol* v. *Ames,* 173 U. S. 509, 516, 517 [19 Sup. Ct. 522, 526, 43 L. Ed. 786, 792].) We note then that the plaintiff is, by virtue of the act, a "hairdresser" though in fact she does not practice that art, knows nothing of it and has no desire to acquire knowledge of it. She is now, and for a long time past, has been engaged exclusively in facial massage. In this lawful occupation she sustains herself

abundantly and desires to continue to be self-sustaining by exercising her chosen occupation—an ambition in this day not wholly without need of encouragement. That in order to secure her right to labor as she chooses she must become a "hairdresser" in fact and to that end practice, have experience in, and pass an examination in shampooing, waving, coloring, dressing and care of the hair, or in the alternative, starve or go to jail. We can find nothing in the relation of facial massage with the arts of hairdressing which suggests that the public morals, safety, health or general welfare demands that the masseuse must be trained in those arts. We consider the attempted relation of hairdressing and facial massage arbitrary in the extreme. Viewing the varying modes of hairdressing over a span of fifty years it may be said that such art is more akin to architecture than to the care of the skin. We cannot say that one who is an expert masseuse, and has established a profitable business as such, should be deprived of her estate because she is not also expert in a totally different and unrelated art. The act, insofar as it attempts to deprive the plaintiff of her property, amounts to an unreasonable exercise of legislative authority and deprives plaintiff of her rights guaranteed by our organic law. (*Baker* v. *Daly,* 15 Fed. (2d) 881.)

We hold, therefore, that while the several occupations specified in the act are proper subjects of legislative regulation, the relation of those having no reasonable natural association insofar as they apply to the instant case and an attempted enforcement thereof against the plaintiff, amount to the taking of her property without due process of law and a denial to her of the equal protection of our laws.

The statutes in effect at the time this action was brought and determined have been superseded by sections 7300, et seq., of the Business and Professions Code. The provisions of that code changed many material provisions of the prior act under which several valid reasons could be urged for an affirmance of the judgment. The rights of the parties to continue the injunction will be measured by the present provisions of the code. For this reason we have given no attention to certain provisions of the earlier enactment which might have been controlling had they not been superseded.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.