[L.A. No. 28495. In Bank. Oct. 27, 1967.]

EYE DOG FOUNDATION, Plaintiff and Appellant, v.
STATE BOARD OF GUIDE DOGS FOR THE BLIND
et al., Defendants and Appellants.

538

Wirin, Rissman, Okrand & Posner, Paul M. Posner and Edward Raiden for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Mark Lanier, Deputy Attorney General, for Defendants and Appellants.

BURKE, J.—Both parties appeal from portions of a judgment relating to the validity and enforceability of statutory provisions regulating the training and furnishing of guide dogs for the blind. A hearing was granted by this court, after decision by the Court of Appeal, Second Appellate District, Division One, for the purpose of giving further study to the problems presented. After such study we have concluded that the opinion of the Court of Appeal, prepared by Justice Lillie, correctly treats and disposes of substantially all of the issues involved, and it is therefore, with certain further discussion and disposition of the final contention presented, adopted as and for the opinion of this court. Such opinion (with appropriate deletions and additions as indicated) is as follows:[1]

Plaintiff corporation, engaged in the training of seeing eye dogs for blind persons and of blind persons to use said dogs, sought a declaratory judgment that sections 7200 through 7217 of the Business and Professions Code, covering the entire chapter on the subject ''Guide Dogs for the Blind,'' are unconstitutional on their face and as applied to plaintiff. It also sought an injunction prohibiting defendants from enforcing the above statutes and interfering with plaintiff in the operation of its business or school. The trial court determined that all of the above sections are reasonable and, therefore, constitutional save and except section 7210.5 which makes it unlawful to solicit funds for any person purporting to provide guide dogs for the blind unless such person (for whose benefit the solicitation is made) holds a valid and ''unimpaired'' license from defendant board. As to plaintiff, whose license was suspended because it had no licensed trainer, such section was concluded to be unreasonable because without funds it cannot pay for the salary of a new trainer and without a trainer it cannot recover its license. For a ''reasonable period,'' fixed by the court at 120 days, defendants were accordingly enjoined from enforcing the provisions of section 7210.5. Defendants appeal from that portion of the judgment

---

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. (*Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal.Rptr. 662, 369 P.2d 262].)

partially invalidating section 7210.5; plaintiff, in turn, has appealed from the remaining portions of the judgment upholding the constitutionality of the statutes challenged.

On December 10, 1965, several months after the entry of judgment herein (April 28, 1965), plaintiff's license was formally reinstated by appellant board; such action followed plaintiff's employment of a duly licensed trainer who, it is asserted, was hired away from one of the two other licensed schools. Accordingly, the general rule immediately suggests itself that " ' the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " (*Consolidated Vultee etc. Corp.* v. *United Auto. etc. Workers,* 27 Cal.2d 859, 863 [167 P.2d 725].) ■■■■ As that case points out, "It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. [Citations.]" (*Supra,* p. 863.) As shown above, however, plaintiff not only sought injunctive but declaratory relief, to wit, a declaratory judgment that the subject legislation is unconstitutional on its face and as applied to plaintiff's operation; since it is established that the constitutionality of a statute may be tested in such manner (*Lord* v. *Garland,* 27 Cal.2d 840, 852 [168 P.2d 5]), the general rule governing mootness becomes subject to the case-recognized qualification that an appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination. This qualification or exception has been applied to actions for declaratory relief upon the ground that the court must do complete justice once jurisdiction has been assumed (*Bisno* v. *Sax,* 175 Cal.App.2d 714, 731 [346 P.2d 814]), and the relief thus granted may encompass future and contingent legal rights.[2]

---

[2] "Thus, while it has been said that the declaratory judgment acts necessarily deal with the present rights, the 'present right' contemplated is the right to have immediate judicial assurance that advantages will be enjoyed or liabilities escaped in the future." (15 Cal.Jur.2d 116, citing Borchard, Declaratory Judgments (2d ed.) pp. 927-929.)

■ With respect to the proposition last stated, both sides agree that the instant judgment necessarily affects their rights in the future. Thus, if the entire legislation should be stricken down, defendant board would be powerless to enforce its provisions against plaintiff Foundation or any other entity similarly engaged; plaintiff, in turn, would be deprived of the grace period (120 days )during which it could solicit funds if the validity of section 7210.5, as presently worded, is sustained on appeal. There is also agreement between the parties that in the event of a dismissal for mootness plaintiff, in light of its past history in that regard, will again find itself without a trainer; it will thus be relegated to the very situation which precipitated the present litigation, a development creating ''a continuing controversy ripe for decision.'' (*DiGiorgio Fruit Corp.* v. *Department of Employment,* 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487].)

■ Too, since at least one of the statutes in controversy regulates the public solicitation of funds (Bus. & Prof. Code, § 7210.5), a question of general public interest is presented. (*County of Madera* v. *Gendron,* 59 Cal.2d 798, 804 [31 Cal. Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555]; *DiGiorgio Fruit Corp.* v. *Department of Employment, supra,* 56 Cal.2d 54, 58.) The cited cases authorize the retention of an appeal, otherwise dismissable for mootness, when such considerations appear and the questions involved are reasonably sure to rise again. Furthermore, the issues here not only involve the people solicited but they likewise affect our handicapped blind upon whose behalf such solicitations are made; and by the enactment of legislation favoring the blind (Welf. & Inst. Code, § 13000 et seq; Pen. Code, §§ 643a, 643.5), the Legislature has impliedly made their welfare a matter of continued public interest. For all of the above reasons we are accordingly disposed to decide the appeals on their merits.

Plaintiff's constitutional attack on the entire legislation is based on the several grounds set forth in its complaint as amended; generally, it is alleged to be unreasonable and arbitrary and violative of due process. On appeal, however, plaintiff directs the major part of its argument to the invalidity of sections 7214 and 7209, as well as section 7210.5 which was only partially invalidated. Thus, section 7214, requiring the automatic suspension of a school's license if there is no licensed trainer in charge, is said to violate due process in that no provision is therein made for a hearing before an appro-

priate department or agency; according to plaintiff, there is no "compelling public interest" justifying the harshness of this enactment such as confronted the court in *Escobedo* v. *State of California*, 35 Cal.2d 870 [222 P.2d 1], where the suspension of an automobile operator's license under our financial responsibility laws was upheld. Section 7209, defining a person's eligibility for examination as a trainer, is assertedly vague and indefinite and allows for the arbitrary use of discretion by appellant board in contravention of settled constitutional guarantees. With respect to section 7210.5, plaintiff contends that the solicitation of funds for charitable purposes is an exercise of free speech which has been unconstitutionally denied by the statute in question. As for defendants, not only is the validity of the legislation defended by them, but the further claim is made (as it was unsuccessfully below) that plaintiff was without standing to initiate the instant litigation because it had not exhausted its administrative remedies prior thereto. Since this latter point, if well taken, is dispositive of the instant appeal, we resolve that question before a determination of the other issues before us.

Where an administrative remedy is provided by statute, this remedy must ordinarily be exhausted before the courts will act. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) It appears that in or about May of 1963, when plaintiff had a valid license, it discharged its then trainer and immediately became subject to the provisions of section 7214; it further appears that in August of 1964 an investigation was commenced by the Attorney General's office into plaintiff's operations, including the solicitation of funds. No formal accusation, seeking an administrative adjudication that plaintiff was in violation of the governing statutes (Gov. Code, § 11505), was filed until January of 1965—some two and one-half months after the filing of plaintiff's original complaint and two months after the amended complaint was filed. Issues were thereafter joined by plaintiff's "Notice of Defense" (Gov. Code, § 11506), and the administrative proceeding is still pending. [Defendants do not suggest the availability of an administrative remedy through proceedings which plaintiff could have instituted.] We agree with plaintiff that an investigation is not the equivalent of a formal accusation compelling it to seek relief from the administrative body before recourse to the

courts; in that regard, it is a matter of common knowledge that investigations frequently fail to develop sufficient facts warranting the institution of formal proceedings. Indeed, section 11503 of the Government Code provides in part that ''A hearing to determine whether a right, authority, license or privilege should be revoked, suspended, limited or conditioned shall be initiated by filing *an accusation*'' (italics added) setting forth the acts or omission with which respondent is charged. Jurisdiction not having attached to the administrative body when plaintiff commenced the instant litigation, plaintiff was not required to exhaust its remedies before that body, particularly since the legislation from which the board derives its existence is challenged in the present proceeding. True, such cases as *United States* v. *Superior Court,* 19 Cal.2d 189 [120 P.2d 26], *People* v. *Coit Ranch, Inc.,* 204 Cal.App.2d 52 [21 Cal.Rptr. 875], and *Walker* v. *Munro,* 178 Cal.App.2d 67 [2 Cal.Rptr. 737], are said to stand for the proposition that the doctrine under discussion applies even though the statute sought to be applied is attacked on constitutional grounds. In *Walker,* however, the court points out that ''until the administrative procedure has been completed, plaintiffs' contention that they may not be able to obtain a ruling on the constitutional questions appears premature'' (p. 73); in our case, as shown above, the administrative procedure had not even been started when the constitutional challenge was made, and such claim cannot, therefore, be held to have been prematurely advanced. Under the circumstances, the trial court properly took jurisdiction of the instant controversy.

 We first determine the claim of plaintiff corporation that certain key sections of the subject chapter invalidate the legislation in its entirety, bearing in mind (what courts have repeatedly declared) that every intendment is in favor of the constitutionality of the legislative act. (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990].) As stated in *Lockard,* ''. . . we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government—the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact-finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. The duty to uphold legislative power is as much the duty of appel-

late courts as it is of trial courts, and under the doctrine of separation of powers neither the trial nor appellate courts are authorized to 'review' legislative determinations. The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations." (Pp. 461-462.)

First, it is contended that section 7214 exceeds constitutional limits by providing for the automatic suspension of plaintiff's license without a hearing "if there is no licensed trainer in charge. . . ." ██ Statutes of the kind here in suit should be construed to require a hearing unless the legislative enactment expressly provides otherwise—and that is the situation here. ██ Both sides rely on *DiGenova* v. *State Board of Education*, 45 Cal.2d 255 [288 P.2d 862], and *Escobedo* v. *State of California, supra,* 35 Cal.2d 870, apparently the only California cases which were met with this problem of summary license suspension. In *DiGenova,* section 12756 of the Education Code, declaring that the credentials of a teacher shall be forthwith suspended upon proof of conviction of a sex offense, was upheld; likening the circumstances there presented to a disbarment proceeding, the court reasoned that the teacher (as did the attorney) had had his day in court in the course of the criminal proceeding; and the summariness of the suspension was justified on the theory that it was not unreasonable for the Legislature to find that teachers convicted of sex offenses should be promptly removed from the classroom and contact with students. In *Escobedo,* as noted earlier, California's financial responsibility laws came under attack. It was there held that the state, in the exercise of its police power, could constitutionally require a deposit of security by owners of all vehicles as a condition to licensing them; instead, it chose to allow financially irresponsible licensed operators to operate vehicles until they became involved in an accident with the consequence described in the governing sections of the Vehicle Code. "Suspension of the license without prior hearing but subject to subsequent judicial review did not violate due process if reasonably justified by a compelling public interest." (35 Cal.2d 870, 876.)

Plaintiff seeks to distinguish *DiGenova* with the statement that neither the school nor the trainer (unlike plaintiff DiGenova) has been convicted of, or even charged with, any public offense; too, in the present case two licenses are in-

volved, that of the school and the trainer, and the former becomes suspended upon the suspension of the latter. The statute upheld in *Escobedo,* however, does not make conviction of a crime a condition precedent to the summary result enacted, and sometimes vicarious liability will be imposed when the circumstances fairly warrant such a consequence.[3] Since both cases, above cited, concededly turn upon the finding of a compelling public interest, plaintiff argues that no such finding can here be made. Thus, thousands of uninsured motorists having been involved in accidents, the impracticability of requiring a hearing in each case justified the legislation challenged in *Escobedo.* According to plaintiff, defendant board has hardly a minimal percentage of the business which would have engaged the appropriate agency if *Escobedo* had reached a contrary conclusion; specifically, plaintiff was only one of three licensed schools in California at the time of the trial. But this argument is wholly out of harmony with plaintiff's contentions against the mootness of this appeal; in that connection it is said that the determinations made below "affect more than the rights of this particular respondent and, in effect, affect all schools engaged in the training of seeing eye dogs and blind persons, and affect all of the people of the State of California." Continuing, "Such determinations are a matter of general public interest and survive the existence of the particular facts that may have prompted the initiation of the lawsuit."

Solely in view of the above concession, possibly we would be justified in rejecting the proposition presently contended for; but there are other considerations militating against the instant claim for unconstitutionality. Citing *Carroll* v. *California Horse Racing Board,* 16 Cal.2d 164 [105 P.2d 110], plaintiff admits that there is considerable uncertainty in the cases on the question of the legislative power to authorize revocation of licenses without notice and hearing where the business involves dangers to the public, but it takes the position that the operation of its school does not involve similar hazards; perhaps not to the public, but the same may not be said with respect to the blind (some 35,000 in number) who

---

[3] "Inasmuch as the Legislature of this state has seen fit, in the exercise of its power, to impose upon petitioner criminal liability for the offense which was committed by his employee, we cannot, in the light of the authorities above cited, hold that the statute as written, or as applied here, invades a constitutional right of the petitioner." (*In re Marley,* 29 Cal.2d 525, 531 [175 P.2d 832].)

are served thereby. The latter have their special problems which can be alleviated in part by the proper operation of schools such as plaintiff's; to the trainer, as the key member of such a school, there has been committed the responsibility of assuring that when a blind person has completed the required courses, he will be neither a danger to himself nor to the public. Upon his separation from a school's service, the school becomes impotent to carry out the objectives for which it was licensed.

Mindful of the state's interest (as already noted) in the blind and their problems, we think that the dangers immediately incident to the operation of plaintiff's school without a licensed trainer justifies the summary suspension provided for in the challenged statute. Certainly it may not be said that there is no rational connection between circumstances sought to be avoided and the subject legislation. Even so, "As individuals, we might find the theories supporting the law insubstantial and inacceptable. ▓▓▓ As a court, pursuing judicially established standards, we may invalidate the statute only if these theories are devoid of any rational connection with public interest objectives as the Legislature may have conceived them. We are not able to say that the law is irrationally conceived, that the Legislature could not have accepted the board's present arguments as the basis for finding that this statute serves a public interest." (*Doyle* v. *Board of Barber Examiners*, 219 Cal.App.2d 504, 517 [33 Cal.Rptr. 349].)

▓▓▓ The next key statute criticized, section 7209, provides in part that "A person to be eligible for examination as a trainer of guide dogs for the blind must . . . (2) have a knowledge of the special problems of the blind and how to teach them, . . ." and "(4) be suited temperamentally and otherwise to train blind persons in the use of guide dogs, . . ." The above provisions, says plaintiff, are both vague and indefinite and arbitrarily vest in defendants, without any adequate yardstick or guideline, an unlimited discretion to determine the applicant's eligibility. Other subdivisions of the same section [requiring a background of experience on the part of the applicant] are criticized because they assertedly work a personal hardship on plaintiff and other schools in view of the "paucity" of available personnel interested in this form of endeavor. ▓▓▓ These arguments must be tested by the principle that "When the state sees fit to regulate upon a matter which is within its police power, its au-

thority over the subject is plenary and can be reviewed by the courts only to the extent of determining whether the regulation is reasonable." (*Sandstrom* v. *California Horse Racing Board,* 31 Cal.2d 401, 407-408 [189 P.2d 17, 3 A.L.R.2d 90].) ██ Also, more pertinent here, "Those things which, though not evil in themselves, if practiced by those not adequately trained therein by education and experience, or by those not morally qualified or of sufficient age or discretion, may endanger the health, safety, morals or general welfare of the people, may not be prohibited but may be controlled by reasonable regulation." (*Whitcomb* v. *Emerson.* 46 Cal.App. 2d 263, 273 [115 P.2d 892].) The case just cited goes on to quote from *Dent* v. *State of West Virginia,* 129 U.S. 114 [32 L.Ed. 623, 9 S.Ct. 231] that "it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; . . . ██ The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty." (*Supra,* pp. 273-274.) The instant claim about personal hardship is thus answered by the last observation in *Dent.*

██ As for the complaint that defendants under the subject legislation are vested with unlimited discretion, the same might be said of almost any licensing board established under the laws of this state; discretion is not uncontrolled and unguided if it calls for the exercise of judgment of a high order. [ ] [*Tarpey* v. *McClure,* 190 Cal. 593, 600 [213 P. 983]; *Mitchell* v. *Morris,* 94 Cal.App.2d 446, 449 [210 P.2d 857] ; see also *Riley* v. *Chambers,* 181 Cal. 589, 595 [185 P. 855, 8 A.L.R. 418].]

We also take notice of the fact that section 7209 was amended in 1953 after its original enactment in 1947, presumably after further legislative study of the qualifications required for the subject occupation. *In re Porterfield,* 28 Cal.2d 91, 103 [168 P.2d 706, 167 A.L.R. 675], wisely observes that "The people have a right of experimentation, of evolution through trial and error." Since we are told that California is the only state which licenses schools of the type conducted by plaintiff, we cannot assume that the Legislature was unaware of that fact when the subject chapter was added to the subject code and subsequently amended. The failure to change the

law in the respects here urged after a six-year period of "trial and error" evidences a legislative intent "to leave the law as it stands in the aspects not amended." (*Cole* v. *Rush,* 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137].) With the wisdom of such intent we cannot, and will not, concern ourselves.　The statute being a reasonable regulatory enactment insofar as it determines and defines the several license eligibility requirements, it may not be held to be unconstitutional.

　Little need be said about plaintiff's next point, which is only briefly discussed in its brief, that the entire act offends the equal protection clause of both state and federal Constitutions by selecting guide dog charities for special licensing procedures, thus favoring other charities which are not similarly regulated.　It is a fundamental rule of constitutional law recognized in all jurisdictions in this country that legislation is not discriminatory if it relates to and operates uniformly upon the whole of a single class properly selected. (11 Cal.Jur.2d, § 273, pp. 719-720.) "There is no constitutional requirement of uniform treatment but only that there be a reasonable basis for each classification." (*Bilyeu* v. *State Emp. Retirement System,* 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442].) *Bilyeu* also points out that a wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute.　It is enough to note that the Legislature, because of the special problems of the blind, has chosen guide dog schools for regulation and licensing, and the law operates equally to all persons engaged in the operation of such schools. The act is clearly not open to constitutional attack upon the further ground here asserted.

　Section 7210.5, the final statute in the chapter singled out for attack, prohibits the solicitation of funds unless the person concerned holds a valid and unimpaired license issued by defendant board; and, as shown above, such license becomes ineffective immediately upon the trainer's separation from service.　That reasonable regulation of charitable organizations is within a government's police power has long been established; such regulation does not intrude upon the right of free speech. (*Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 245-246 [163 P.2d 704] ; *Matter of Application of Dart,* 172 Cal. 47 [155 P. 63, Ann. Cas. 1917D 1127, L.R.A. 1916D 905].) "The occupation of solicit-

ing contributions to charitable purposes is clearly so far subject to the police power, that it may be regulated by laws or ordinances providing for a reasonable supervision over the persons engaged therein, and for the application and use of the contributions received to the purposes intended, in order to prevent unscrupulous persons from obtaining money, or other things, under the pretense that they were to be applied to charity, and to prevent the wrongful diversion of such funds to other uses, . . ." (*Matter of Application of Dart, supra*, p. 56.) Heretofore we have concluded that the summary suspension of plaintiff's license (as provided by § 7214) is a valid enactment and in the public interest[ ]. [The same conclusion must be reached with respect to section 7210.5, even though, as plaintiff points out, the latter is a "solicitation" statute as distinguished from section 7214 which may be termed a "qualifications" statute of which the blind are the principal beneficiaries.

Defendants correctly note that without a trainer the school cannot accomplish its charitable purpose and that to permit it to solicit funds for a purpose it may find impossible to achieve can result in a fraud on the public, however unintentional on the part of the school. The conceded facts that it is very difficult to obtain a trainer, that few people are qualified and few are licensed, and that the trial court found on substantial evidence that plaintiff made a bona fide attempt during the period in question to secure a licensed trainer, are of no assistance to plaintiff in the light of the applicable principles set forth hereinabove. The determination of the Legislature that solicitation of funds for an express purpose should be permitted only by those who are qualified and who currently possess the ability to carry out the purpose is obviously not unreasonable. The very paucity of licensed trainers, cited by plaintiff, may well have been a motivating factor to the Legislature. It follows that the trial court erred in its view that the proscription of solicitation of funds set forth in the statute is unreasonable and arbitrary, and that a "reasonable period," fixed by the court at 120 days from the date of entry of judgment, should be accorded plaintiff within which to solicit funds even though still without the services of a licensed trainer.[4]

---

[4] Also, see *Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97]: "When the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]"

That portion of the judgment which declares section 7210.5 unconstitutional and which enjoins defendants from enforcing or threatening to enforce it for the 120-day period is reversed. In all other respects the judgment is affirmed.]

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.