[Civ. No. 34063. Second Dist., Div. Two. Oct. 28, 1969.]

MICHAEL VARANELLI et al., Plaintiffs and Appellants, v. STRUCTURAL PEST CONTROL BOARD et al., Defendants and Respondents.

## COUNSEL

Samuel Duskin, David S. Smith and Alan H. Wiener for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**FLEMING, J.**—Does California's Structural Pest Control Act (Bus. & Prof. Code, §§ 8500-8677) apply to door-to-door solicitors of free structural pest control inspections, and, if it does, is such application constitutional? The trial court answered both questions in the affirmative and concluded that the act covers the solicitations being carried on by plaintiffs, that such coverage is constitutional, and that plaintiffs are not entitled to conduct door-to-door solicitations for free pest control inspections without securing a license under the act.

Appellants argue: (1) the statute does not cover their activities, (2) but if it does, the statute bears no reasonable relationship to the public interest and is therefore unconstitutional.

### I

 The statute defines structural pest control to include "soliciting . . . of an inspection or inspections for the purpose of identifying . . . infestations . . ." (§ 8505.) Article 3 of the Structural Pest Control Act makes it unlawful for any unlicensed person to engage in the business of structural pest control. (§ 8550.)

A qualified person may obtain a license as a structural pest control operator or as a structural pest control field representative. An applicant for either category of license must possess good character (§ 8568); demonstrate, by examination, knowledge of pertinent laws, of the dangerous chemicals used in pest control, and of the theory and practice of pest control (§§ 8565, 8566); and establish the requisite training and experience of two years for operators and six months for field representatives. (§§ 8562, 8564.)

There is no general exemption in the act for all employees of a licensed operator. But the Legislature has authorized unlicensed employees to perform acts under specified conditions which would otherwise require a license. Section 8506 permits an operator to use unlicensed individuals "on service contracts already established" but such individuals, i.e., crewmen, must work on pest control jobs under the supervision of an operator or field representative. (§ 8512.) Futhermore, only after an inspection by a

licensed operator or field representative may an unlicensed employee submit bids or sign contracts on behalf of a licensed corporation, partnership, or individual. (§ 8515.)

It is significant that the legislative definitions of structural pest control operator and structural pest control field representative permit the licensee to "secure structural pest control work." (§§ 8506, 8507.) The term "secure" in sections 8506 and 8507 is used in addition to inspecting, bidding, or contracting in both sections and must mean the direct contacts with home owners prior to inspecting and bidding. Thus, by denying a general exemption for all employees, by granting authority to licensed individuals to "secure work," and by not granting authority to unlicensed employees to solicit or otherwise secure work, the clear implication, under the rule *expressio unius est exclusio alterius*, is that unlicensed employees may not solicit or otherwise secure structural pest control work.

While the primary purpose of prohibiting solicitation may have been to prevent persons who represent non-licensees from doing anything that would bring pest control work to their principals, the Legislature may well have concluded from past selling practices in the structural pest control field that to protect the public only persons of established character and knowledge should be permitted to solicit or otherwise attempt to secure pest control work on behalf of licensed operators.

It is plain to us that the act covers solicitations carried on in the manner described in the complaint by appellants. Whether such coverage is desirable or undesirable involves arguments on policy which must be addressed to the Legislature.

## II

Appellants' second contention, that of unconstitutionality, involves the general question of regulation of door-to-door solicitation. On this point we find ourselves in complete agreement with the arguments presented in respondent's brief, and we hereby adopt them as the court's opinion on constitutionality:

Appellants argue it is an invalid exercise of the police power to require a person who limits his activities to door-to-door solicitation of free inspections by his employer to be licensed, either as a structural pest control operator or as a field representative. Appellants further assert that, as applied, the act violated the Fourteenth Amendment guarantees of due process, equal protection, and free speech.

All presumptions favor the constitutionality of a statute enacted by the Legislature; all doubts are resolved in favor of and not against the validity of the statute. Before an act of a coordinate branch of the government can be declared invalid for the reason that it is in conflict with the Constitution, such conflict must be clear, positive, and unquestionable. (*Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 636 [91 P.2d 577].)

The California Supreme Court described economic due process in *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control,* 65 Cal.2d 349, 358-359 [55 Cal.Rptr. 23, 420 P.2d 735], as follows: "Plaintiff first contends that these provisions [minimum retail liquor prices] are unconstitutional because they exceed the police power of the state. In passing upon the validity of that contention, we exercise an extraordinary power over a coordinate branch of government and perform a correspondingly narrow function: we simply determine whether the statute reasonably relates to a legitimate governmental purpose. In so doing, we find the requisite relationship in the absence of an unquestionable contrary showing. [Citations.] We must not confuse reasonableness in this context with wisdom. ' "The doctrine . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely . . . has long since been discarded . . ." [Citations.]' '"

Thus, ". . . judicial examination of a statute under economic due process attack is completed when any fact or facts appear which the legislature might rationally have accepted as the basis for a finding of public interest. . . . In the pursuit of acceptable legislative hypotheses, judges have not hesitated to draw upon their own experience and upon abstract studies in the particular regulatory field."(*Doyle* v. *Board of Barber Examiners,* 219 Cal.App.2d 504, 514, 515 [33 Cal.Rptr. 349].)

*Breard* v. *Alexandria,* 341 U.S. 622 [95 L.Ed. 1233, 71 S.Ct. 920, 35 A.L.R.2d 335], is pertinent. A municipal ordinance made it unlawful to engage in door-to-door soliciting. The criminal conviction of the solicitor was upheld despite contentions that the ordinance constituted a taking of property without due process, abridged freedom of speech, and unlawfully burdened interstate commerce. On the due process argument the court's opinion states: "The Constitution's protection of property rights does not make a state or a city impotent to guard its citizens against the annoyances of life because the regulation may restrict the manner of doing a legitimate business. The question of a man's right to carry on with propriety a standard method of selling is presented here in its most appealing form—an assertion by a door-to-door solicitor that the Due Process Clause of the Fourteenth Amendment does not permit a state or its subdivisions to deprive a specialist in door-to-door selling of his means of livelihood. But putting aside the argument that after all it is the commerce, i.e., sales of periodicals, and not the methods, that is petitioner's business, we think that even a legitimate occupation may be restricted or prohibited in the public interest. See the dissent in *New State Ice Co.* v. *Liebmann,* 285 U.S. 262, 280, 303 [76 L.Ed. 747, 755, 767, 52 S. Ct. 371]. The problem is legislative where there are reasonable bases for legislative action. We hold that this ordinance is not invalid under the Due Process Clause of the Fourteenth Amendment." (341 U.S. at pp. 632-633 [95 L.Ed. at pp. 1242-1243].)

Cases cited by appellant, *Whitcomb* v. *Emerson,* 46 Cal.App.2d 263 [115 P.2d 892], and *Skaggs* v. *City of Oakland,* 6 Cal.2d 222 [57 P.2d 478], were decided in an era less receptive to economic legislation. In *Whitcomb,* the court found that it was unreasonable and arbitrary for a person working only as a masseuse to be required to pass an examination in the other aspects of cosmetology. The court in *Whitcomb* held that the case before it involved the regulation of the occupation of a masseuse. The court said in effect, that the Legislature should have established a special license for "facial massage." In *Skaggs,* the court held that a city could not prohibit bakery trucks from using the streets at night and on holidays.

■ The current doctrine of judicial review of the reasonableness of regulatory legislation is that judicial examination of a statute under economic due process attack is completed when any fact or facts appear, or may be hypothesized, which the Legislature might rationally have accepted as the basis for a finding of public interest. (See *Doyle* v. *Board of Barber Examiners, supra,* 219 Cal.App.2d at pp. 505-515.)

In *Daniel* v. *Family Security Life Ins. Co.,* 336 U.S. 220 [93 L.Ed. 632, 69 S.Ct. 550, 10 A.L.R.2d 945], the court upheld a South Carolina statute characterized by the court as making illegal the sale of funeral insurance. The statute was held valid, despite a lower court finding that funeral insurance is desirable and that the statute was designed to destroy the plaintiff insurance company and its business.

In *Williamson* v. *Lee Optical,* 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461], the court upheld an Oklahoma statute which in effect forbade an optician from supplying a lens or fitting old glasses into new frames without a prescription from an opthomologist or optometrist, even though the law exacted a needless, wasteful requirement in many cases. The court's opinion declared: ". . . But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

"The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." (At pp. 487-488 [99 L.Ed. at p. 572].)

In *Ferguson* v. *Skrupa,* 372 U.S. 726 [10 L.Ed.2d 93, 83 S.Ct. 1028, 95 A.L.R.2d 1347], Skrupa was engaged in the business of "debt adjusting" in Kansas. The Kansas Legislature passed a law which made it a misdemeanor for anyone to practice debt adjusting who was not a lawyer. The United States Supreme Court reversed the judgment of a three-judge court which had enjoined enforcement of the statute. In effect, the court indicated that invalidity of a state economic regulatory statute would have

to be based upon some provision other than the Due Process or Equal Protection CLauses.

In *England* v. *Louisiana State Board of Medical Examiners,* 246 F.Supp. 993, the State of Louisiana, by amending its laws relating to the healing arts, in effect prohibited the practice of chiropractic unless the chiropractor graduated from medical school and passed an examination in *Materia Medica* and surgery. The court upheld the state law with the following comment: "It may well be that chiropractic is a useful profession and that the requirement of a medical education for chiropractors is not in the public interest. But the 'balanc[ing of] the advantages and disadvantages of [this] requirement,' . . . is for the legislature. And, ordinarily, '[f]or protection against abuses by legislatures the people must resort to the polls, not to the courts.' " (At p. 997.)

A recent expression of the attitude of the courts toward regulation of business is found in *Brotherhood of Locomotive Firemen & Enginemen* v. *Chicago R. I. & P. R. Co.,* 393 U.S. 129, 143 [21 L.Ed.2d 289, 299, 89 S.Ct. 323], where the Supreme Court in the following language answered the railroad's contention that Arkansas statutes which required railroads to employ additional personnel violated due process and equal protection: "Insofar as these arguments seek to present an independent basis for invalidating the laws, apart from any effect on interstate commerce, we think, with all due deference to appellees and District Court, that these contentions require no further consideration."

In *Oosterveen* v. *Board of Medical Examiners,* 112 Cal.App.2d 201 [246 P.2d 136], plaintiffs contended that it was unconstitutional to in effect outlaw the practice of naturopathy by imposing the requirement that naturopaths become licensed as either physicians, surgeons, or chiropractors. The court stated therein: "It is somewhat difficult to understand why one who has received the same education in the basic sciences in a naturopathic college as a student of chiropractic would receive in a chiropractic college, should be required to pursue further study in chiropractic in order to obtain a license under which he would be privileged to employ drugless healing methods without resorting to manipulation of the joints. But this was a matter for the Legislature, and we think it was within the legislative power to require naturopaths to acquire the education and pass the examination demanded of applicants for chiroprators' licenses, and that there is no undue discrimination against them." (At pp. 207-208.) (See also, *Rosenblatt* v. *California State Board of Pharmacy,* 69 Cal.App. 2d 69 [158 P.2d 199]; *People* v. *Jordan,* 172 Cal. 391, 398-400 [156 P. 451].)

There are many rationally acceptable hypotheses for the requirement that a licensed operator perform his own direct contact with owners or hire a licensed field representative to perform that activity. The Legislature may have believed that direct person-to-person contact between a repre-

sentative of the licensee and the home owner was bound to engender a discussion of the technical aspects of structural pest control; that unlicensed solicitors would tend to exceed their instructions in order to bring in customers; that companies might employ solicitors who are not well instructed; that solicitors might tend to make misleading statements and offer technical advice; and that unlicensed solicitors might not meet the character requirements imposed upon operators and field representatives. (§ 8568.) These furnish sufficient justification for the legislative action.

Appellants also contend that owners of structural pest control operations have been unreasonably discriminated against by the Legislature and thereby denied equal protection of the laws. We are unable to find such discrimination. Unlicensed employees in a real estate office cannot solicit listings. (§§ 10130-10132.) Nor can unlicensed employees of a cemetery broker solicit the sale or purchase of cemetery property. (§ 9676, 9677.) Nor can attorneys abdicate their powers and privileges to unlicensed representatives. (Cf. *Townsend* v. *State Bar,* 210 Cal. 362 [291 P. 837].) Equal protection of the law is not denied because a regulatory statute includes some persons, or classes of persons, who might rationally have been excluded. Basically, the establishment of proper classifications resides in the legislative domain, and the judiciary will not intrude unless the classes created for separate treatment represent invidious discrimination, that is, treatment which has no rational basis in relation to the specific objective of the regulatory legislation. (*Williamson* v. *Lee Optical, supra,* 348 U.S. 483 at pp. 488-489 [99 L.Ed. 563 at pp. 572-573, 75 S.Ct. 461]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536, 549 [63 Cal.Rptr. 21, 432 P.2d 717].)

The comment of the court in *Ex parte Whitley,* 144 Cal. 167, 178 [77 P. 879, 1 Ann. Cas. 13], is pertinent: "The law, no doubt, is discriminatory, but not in any constitutional sense. It does not discriminate between classes. The discrimination goes to the degree of learning and skill which all applicants for examination must possess. It discriminates between those who have the necessary degree of learning and skill, and those who have not; between those who are able and those who are unable to acquire it. It is not an unreasonable or capricious discrimination applying to classes as such, or members of a class, but is based solely upon professional qualifications. It is a discrimination which, in the interest of the public welfare, it is the duty of the legislature to make, and the necessity for which, and its nature and extent—whether an examination and right to practice shall depend on the possession by the applicant of a diploma of a dental college only, or be extended to others, and how far—depend primarily upon the judgment of the legislature, which, when reasonably exercised, the courts cannot control."

Appellants' final constitutional argument is that the Structural Pest Control Act, as applied, violates freedom of speech. The state

does not violate the First Amendment in prohibiting door-to-door solicitation. (*Breard* v. *Alexandria, supra,* 341 U.S. at pp. 641-645 [95 L.Ed. at pp. 1247-1249].) ■ Reasonable business regulations are valid even though elements of public expression are involved. (*Powers* v. *Floersheim,* 256 Cal.App.2d 223, 233 [63 Cal.Rptr. 913].)

We conclude that the licensing requirements for persons who solicit free inspections door-to-door on behalf of licensed pest control operators are constitutional.

The judgment is affirmed.

Roth, P. J., and Wright, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 17, 1969.