Filed 5/27/21  In re Mila A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MILA A., a Person Coming Under the Juvenile Court Law. | B308744<br>(Los Angeles County Super. Ct. No. 20CCJP03812A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ERIKA G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Affirmed.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

A juvenile court exerted dependency jurisdiction over a toddler due to her mother's persistent use of marijuana.  The mother appeals, arguing that the court's decision to exercise jurisdiction was not supported by substantial evidence.  Her arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Erika G. (mother) and Giovany A. (father) have one child together—Mila A., born December 2016.

Mother has used marijuana over the last few years to help her sleep.  She ingested marijuana even while actively trying to conceive and until she learned she was pregnant with Mila, which was three or four months after conception.  After Mila was born, she continued using marijuana nightly with father.  Although she and father would leave Mila with the paternal grandmother while they smoked in the evenings, they would retrieve Mila at bedtime and would be Mila's sole caregivers despite being under the influence.  After mother ended her relationship with father around August 2020 and moved in with

2

maternal grandmother, mother would still use marijuana at night and then go to bed while being responsible for Mila.

Mother minimized both the extent of her marijuana use and its impact on Mila. She said she began smoking in high school, but stopped and did not start again until she was 18 years old. This was contradicted by her admission that she used while trying to conceive Mila (which was before mother was 18). She said she did not ever smoke inside her residence, but this was contradicted by the odor of marijuana in her residence (which she blamed on the smell "seeping" into her residence from neighbors' nearby use). She said at least one adult was always sober at night to care for Mila, but this was contradicted by mother's statement that she and father would retrieve Mila at night after they had smoked and by the fact that mother smoked before going to bed even after she separated from father.[1]

In June 2020, mother tested positive for marijuana and father tested positive for marijuana and cocaine. Mother promised to voluntarily enroll in a drug treatment program but never did.

## II. Procedural Background

In mid-July 2020, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Mila on the ground that mother and father had a "history of substance abuse" and were "current abuser[s]" of marijuana (as to mother) and marijuana and cocaine (as to father), which rendered them "incapable of providing regular care for the child" and "placing" her "at risk of serious physical harm" (thereby rendering

---

[1] Although maternal grandmother's boyfriend also lived with them, there was no evidence that he ever cared for Mila.

dependency jurisdiction appropriate under Welfare and Institutions Code, section 300, subdivision (b)(1)).[2]

Although mother told the Department that she stopped using marijuana after the Department filed its petition, mother subsequently tested positive for marijuana eight times. Six of those results were indicative of daily use and the marijuana levels in mother's test results increased at times when she was under close supervision by the Department and the juvenile court—namely, the levels in her test results doubled after the detention hearing and also increased leading up to the adjudication hearing. On October 8, 2020, father drove mother and himself to a drug test with Mila in the car, and the subsequent results for both of them was positive, but mother later denied ever seeing father drive with Mila with drugs in his system.

In November 2020, the juvenile court held a combined jurisdictional and dispositional hearing. The court sustained the allegations against mother and father, and removed Mila from father—but not mother.[3] The court ordered family preservation services for mother; mother's case plan required her to submit to ten random or on-demand drug tests that had to show decreasing levels of marijuana.

Mother filed this timely appeal.

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] The juvenile court removed Mila from father's care because, after he failed to submit to several drug tests, he tested positive for cocaine and high levels of marijuana.

## DISCUSSION

Mother argues that substantial evidence does not support the juvenile court's exercise of dependency jurisdiction. Before reaching this argument, however, we first address a question of justiciability.

## I. Justiciability

As a threshold matter, the Department asserts that mother's challenge is not justiciable because father has not also appealed, such that the court's exercise of dependency jurisdiction over Mila will remain appropriate based on father's conduct no matter how we resolve mother's appeal.

Juvenile dependency jurisdiction attaches *to the child*, not to the parent. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) Thus, if there is one valid basis for exerting dependency jurisdiction over a child, a challenge to any other basis for jurisdiction is likely to have no effect on the juvenile court's rulings and thus likely to be little more than an ""opinion[] upon [a] moot question[] or [an] abstract proposition[]."" (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541; *In re D.P.* (2014) 225 Cal.App.4th 898, 902 ["'[A]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"].)

Appellate courts nevertheless retain the "discretion" to hear the merits of a challenge to a juvenile court's jurisdictional finding, even if overturning that finding will have no immediate effect on the juvenile court's assertion of jurisdiction. (*I.A.*, *supra*, 201 Cal.App.4th at pp. 1494-1495.) However, courts will generally exercise that discretion only upon a showing that (1) the challenged finding will have some further consequence in the case at issue, such as when the finding "serves as the basis for

5

dispositional orders that are also challenged on appeal," or (2) the challenged finding could have some further consequence in a future proceeding, most likely a future dependency or family law proceeding, such as when the finding declares the appealing parent to be an "offending" parent rather than a "non-offending" parent or when the finding itself is "pernicious" or "carries a particular stigma." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*); *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.)[4]

Because the validity of the allegations mother challenges in this appeal are what make her an "offending" parent rather than a "non-offending" parent, we elect to exercise our discretion to reach the merits of mother's appeal.

## II. Jurisdictional Finding

We evaluate the sufficiency of the evidence supporting a juvenile court's jurisdictional finding by asking whether there is enough evidence in the record that is reasonable, credible, and of solid value that a reasonable trier of fact could reach the same conclusion as the juvenile court. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979.) In so doing, we consider the record as a whole, and resolve all conflicts and draw all reasonable inferences to support the juvenile court's findings. (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) Only if the record *compels* a finding in favor of mother as a matter of law must the juvenile court's jurisdictional finding be reversed. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528,

---

[4] Although *Drake M.* articulated three types of showings justifying the exercise of discretion, those types fall into the two broader categories described above.

disapproved on other grounds, *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4, 1011, fn. 7.)

Under section 300, subdivision (b)(1), a juvenile court may exert dependency jurisdiction if, as pertinent here, a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" due to (1) "the failure or inability of ... her parent ... to adequately supervise or protect" her, or (2) "the inability of the parent ... to provide regular care for the child due to the parent's ... substance abuse." (§ 300, subd. (b)(1).) When the failure to supervise is based on drug abuse, courts employ a "tender years" presumption; under that presumption, a "finding of substance abuse is prima facie evidence of the inability of a parent . . . to provide regular care resulting in a substantial risk of physical harm." (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767; accord, *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1385 (*Kadence P.*); *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220 (*Christopher R.*).) In such cases, jurisdiction is appropriate even without proof of "an identified, specific hazard in the child's environment." (*Drake M.*, at pp. 766-767, italics omitted.) What is more, *risk* of harm means just that: The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction . . . ." (*Kadence P.*, at p. 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

Substantial evidence supports the juvenile court's determination that Mila faces "substantial risk . . . [of] serious physical harm" due to mother's "inability" to "supervise" or "provide regular care" for her due to mother's substance abuse. (§ 300, subd. (b)(1).) There is substantial evidence to support the finding that mother has engaged in substance abuse. Mother has

7

been using marijuana for years. More to the point, mother has continued to use even when doing so creates a risk of harm to Mila, including when she was trying to conceive, when she is responsible for Mila at night, and even when she is transporting Mila in a car. Not even supervision by the Department or the juvenile court has halted—or even reduced—mother's use. Instead, she missed testing, did not follow through with her promise to enroll in a drug treatment program, underreported her usage, and was not forthright with the Department about the times when her usage has endangered Mila. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186 [substantial evidence of substance abuse where father's drug test results raised reasonable inference that his use was more frequent than reported and failed to enroll in drug programs as promised]; *In re K.B.* (2021) 59 Cal.App.5th 593, 601 (*K.B.*) [substantial evidence of substance abuse where mother "had been transparently dissembling about her drug use" and "was trying to hide her ongoing addiction"]; *Kadence P.*, *supra*, 241 Cal.App.4th at pp. 1384-1385 [substantial evidence of substance abuse where mother hid drug use and avoided drug tests].) By virtue of the tender years presumption, mother's substance abuse translates to a substantial risk of serious physical harm to Mila. (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219 [children under the age of six are children of tender years].)

Mother resists this conclusion with three arguments.

First, mother acknowledges that she has *used* marijuana but argues that there is insufficient evidence that her use rises to the level of "substance *abuse*" within the meaning of *Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767, italics added. *Drake M.* held that a parent engages in "substance *abuse*" only if (1) a

8

medical professional has diagnosed the parent as having a substance abuse problem, or (2) the parent's substance abuse meets the definition of a substance abuse problem as defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM). (*Id.* at p. 766, italics added.) As have several other courts, we decline to follow *Drake M.* to the extent it purports to require such a showing in all cases. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218; *K.B.*, *supra*, 59 Cal.App.5th 593, 601.) And even if we were to follow the path blazed by *Drake M.* by looking to the DSM, substantial evidence supports a finding of "substance abuse" under the most recent, fifth edition of the DSM. That edition replaced the definition of "substance abuse" with the broader classification of "substance use disorder," which is met when two or three of 11 enumerated factors exist (*Christopher R.*, at p. 1218, fn. 6), and those factors include (1) taking the substance in larger amounts or for longer than a person is meant to, (2) wanting to cut down or stop using the substance but not managing to, and (3) using substances, even if it puts a person or others in danger. (Hartney, *DSM 5 Criteria for Substance Use Disorders* (Mar. 21, 2020) Verywell Mind, archived at <https://perma.cc/CV2S-MT3A> [as of Mar. 19, 2021].) Here, mother's continued—and, indeed, elevated use—of marijuana while under the Department's and juvenile court's supervision, even when that use endangers Mila, meets this definition.

Second, mother argues that the lawfulness of her marijuana use means that that use does not constitute "substance abuse." She is wrong. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 ["even legal use of marijuana can be abuse if it presents risk of harm to minors"].)

Third, mother points us to evidence in the record, including that Mila was well cared for, happy, and meeting developmental milestones, and argues that the dependency court's finding of risk of harm must therefore be based on speculation. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565 [substantial evidence requires more than "mere speculation"].) But because the tender years presumption applies, the absence of any "identified, specific hazard" does not undermine the juvenile court's jurisdictional finding. Mother likens this case to *In re J.A.* (2020) 47 Cal.App.5th 1036 (*J.A.*), but we find *J.A.* inapt. The majority in *J.A.* concluded that substantial evidence did not support dependency jurisdiction due to substance abuse when a mother used edible marijuana to alleviate pregnancy symptoms and stopped immediately after being told to do so (and her cessation was confirmed by postnatal drug tests). (*Id.* at p. 1047.) Here, mother has *not* ceased using marijuana, has at times used even more, and yet has continued to minimize her drug use as well as to endanger Mila by leaving her without sober adult supervision at night.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

11