[No. H036369. Sixth Dist. Nov. 30, 2011.]

SJCBC LLC et al., Plaintiffs and Appellants, v.
JOSEPH HORWEDEL, as Director, etc., Defendant and Respondent.

**COUNSEL**

Law Offices of J. David Nick and J. David Nick for Plaintiffs and Appellants.

Richard Doyle, City Attorney, Nora Frimann, Assistant City Attorney, Shannon Smyth-Mendoza and Margo Laskowska, Deputy City Attorneys, for Defendant and Respondent.

**OPINION**

**RUSHING, P. J.—**

## I. STATEMENT OF THE CASE

Petitioners SJCBC LLC (the San Jose Cannabis Buyer's Collective) (SJCBC) and Pharmer's Health Center Cooperative, Inc. (Pharmer's), filed a petition for a writ of mandate in which they sought an order requiring the director of the San Jose Department of Planning, Building and Code Enforcement (the Department) to rescind two nuisance abatement orders concerning the distribution of medicinal marijuana at two locations within the city limits of San Jose.[1] The court denied the petition due to petitioners' failure to exhaust their administrative remedies, a lack of ripeness, and the failure to demonstrate irreparable harm.[2] It then dismissed the action and entered judgment in favor of the Department.

On appeal from the judgment, petitioners claim that the doctrine of exhaustion of administrative remedies (the Doctrine) was not applicable because their petition came within an exception.

[1] SJCBC and Pharmer's "are medical cannabis collective associations formed under the authority of Health and Safety Code Section 11362.775."

[2] The court's oral ruling was based on these three grounds. However, the judgment entered cites only failure to exhaust and lack of ripeness.

They are correct. The Doctrine was inapplicable and thus we will reverse the order.

## II. BACKGROUND

On January 22 and January 26, 2010, the Department issued nuisance abatement compliance orders under section 1.14.030 of the San Jose Municipal Code (the Code) to SJCBC and Pharmer's and the owners of the premises where they had leased space to operate.[3] The notices stated that under the Code, property could not be used "in a manner that created a public nuisance." (See § 1.13.040.) The notices explained that a public nuisance involved "[t]he maintenance or use of property in the city in a manner that violates, or real property that has been the situs of a violation, . . . of this code or any other city, state or federal law or regulation." (See § 1.13.050, subd. A.3.) The notices pointed out that sale of medicinal marijuana and the cultivation or distribution of marijuana for profit violated the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.) and the federal Controlled Substances Act (21 U.S.C. § 812 et seq.) and "[t]he maintenance or use of property in the City as a marijuana dispensary violates 21 U.S.C. Section 841(a), which makes it unlawful to manufacture, distribute, dispense, or possess marijuana with the intent to [do so]." (See § 1.13.050, subd. A.3.) The notices declared that these uses constituted a public nuisance. The notices also explained that buildings, structures, or land could be used, erected, enlarged, or structurally altered only if doing so complied with the Code and a valid permit issued for such purposes. (§§ 20.40.010, subd. B, 20.10.030.)

The notices then advised the owners, SJCBC, and Pharmer's that the distribution of marijuana at the two leased premises constituted public nuisances because such distribution violated state and federal law and was not an allowed or conditional use in any industrial zoning district in San Jose. The notices further advised that the "[o]peration of an illegal and unpermitted Medical Marijuana/Cannabis Dispensary in a Commercial Pedestrian Zoning District is not an allowed or conditional use in any industrial zoning district." Consequently, the notices required that any and all distribution at the two locations cease on or before February 28, 2010.[4]

In March 2010, SJCBC's landlord had obtained a preliminary injunction prohibiting SJCBC from dispensing marijuana at its leased premises. On April 1, 2010, Pharmer's landlord had initiated eviction proceedings against

---

[3] All unspecified section references are to the San Jose Municipal Code.

[4] It appears that the nuisance abatement notices were sent in response to complaints that the Department received concerning the activities of marijuana dispensaries, including SJCBC and Pharmer's.

Pharmar's based on the abatement notice. On April 27, petitioners filed the instant petition for a writ of mandate or prohibition. On April 29, petitioners appeared ex parte and sought an alternative writ of mandate and stay of enforcement of the abatement notices. On May 7, 2010, the court denied a stay and set the matter for a hearing on the merits of the petition. At that time, the court took judicial notice of pertinent sections of the Code and its own records, including the action by SJCBC's landlord. On August 5, petitioners filed supplemental declarations concerning the pending eviction proceedings against Pharmar's. On August 26, 2010, after a hearing, the court denied the amended petition based on petitioners' failure to exhaust their administrative remedies under the Code.[5] Judgment was entered on October 13, 2010, and in December, petitioners filed their notice of appeal.

### III. Standard of Review

We review the denial of the petition for a writ of mandate on the ground of failure to exhaust administrative remedies under different standards depending on the basis of that decision. We exercise independent review over questions of law such as the interpretation of applicable statutes or codes and whether the Doctrine applies in a given case; we apply the substantial evidence test to factual matters concerning what a party did or did not do. (See *Womack v. San Francisco Community College Dist.* (2007) 147 Cal.App.4th 854, 858 [54 Cal.Rptr.3d 558]; *Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873 [50 Cal.Rptr.3d 636].)

### IV. Exhaustion of Administrative Remedies

Petitioners contend that the Doctrine does not apply here because the petition sought an order requiring the director to act in conformance to the law. Petitioners further contend that the Doctrine was inapplicable because their claims were not governed by the Code, the administrative agency lacked authority and jurisdiction to rule on their claims, the alleged administrative remedy was illusory, and pursuing it would have been futile.

#### A. Applicable Principles

The Doctrine "refers to the requirement that administrative remedies be pursued as a jurisdictional prerequisite to seeking judicial relief from an administrative action." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148 [43 Cal.Rptr.2d 693, 899 P.2d

---

[5] Petitioners filed a petition for a writ of mandate and stay with this court, which we later denied. (*SJCBC, LLC v. Superior Court* (Feb. 8, 2011, H036093) petn. summarily den. by order.)

79].) "In general, a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.' [Citations.]" (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella Valley*); see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942].) "This rule is not a matter of judicial discretion, but rather is a jurisdictional prerequisite." (*Roth v. City of Los Angeles* (1975) 53 Cal.App.3d 679, 686 [126 Cal.Rptr. 163]; see *California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1489 [75 Cal.Rptr.3d 393] (*Newhall County*); *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589 [96 Cal.Rptr.2d 880].) Moreover, it applies whether relief is sought by a petition for traditional or administrative mandate. (*Newhall County, supra,* 161 Cal.App.4th 1464, 1485.) " '[E]xhaustion of administrative remedies furthers a number of important societal and governmental interests, including: (1) bolstering administrative autonomy; (2) permitting the agency to resolve factual issues, apply its expertise and exercise statutorily delegated remedies; (3) mitigating damages; and (4) promoting judicial economy.' " (*Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637, 644 [135 Cal.Rptr.2d 177].)

That said, however, the Doctrine "has not hardened into inflexible dogma." (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761]; accord, *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 322 [25 Cal.Rptr.3d 320, 106 P.3d 976].) It recognizes exceptions, for example, "when the administrative remedy is unavailable, when it is inadequate, or when it would be futile to pursue it. [Citation.] Other exceptions include 'situations where the agency indulges in unreasonable delay . . . , when the subject matter lies outside the administrative agency's jurisdiction, [or] when pursuit of an administrative remedy would result in irreparable harm . . . .' [Citations.]" (*McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 275–276 [54 Cal.Rptr.3d 116]; see *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609 [110 Cal.Rptr.3d 718, 232 P.3d 701]; *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 829 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 105 [26 Cal.Rptr.3d 744]; *Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 620 [113 Cal.Rptr.2d 309]; *Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816, 1827 [17 Cal.Rptr.2d 323]; *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222 [239 Cal.Rptr. 470].)

## B. Administrative Procedures for Nuisance Abatement

To determine whether the Doctrine applied and precluded judicial relief in this case, we first examine the administrative remedy under the Code that petitioners allegedly should have pursued and exhausted before seeking a writ of mandate.

Section 1.14.030, subdivision A, provides, "Whenever the director determines that a violation of any provision of [the Code] within the director's responsibility is occurring or exists, the director may issue a written compliance order to any person responsible for the violation."[6]

 If the person responsible corrects the alleged violation within the time specified, the director need take no further action. (§ 1.14.050, subd. A.) However, if the person does not correct the violation within the specified time, the director must set a hearing before the administrative appeals board, and notice of the hearing must be sent to the party. (§§ 1.14.050, subds. B & C.) The notice must set forth the date, time, and place of the hearing and "serves to provide the full opportunity of a person subject to a compliance order to object to the determination that a violation has occurred and/or . . . continued to exist. The failure of any person subject to a compliance order, pursuant to this chapter, to appear at the hearing shall constitute a failure to exhaust administrative remedies." (§ 1.14.060, subds. A & C.) At the hearing, the board must take evidence concerning the violation and compliance, and issue written findings on (1) whether there was a violation and (2) whether the responsible party failed to correct it. (§ 1.14.070, subds. A–C.) If the board finds that there was a violation that was not corrected, it must issue an administrative order requiring that the violation be corrected, setting a time for correction, and possibly imposing penalties and administrative costs. (§§ 1.14.070, subd. E, 1.14.080.) If the board finds that there was no violation or that it was corrected, it must issue a finding of those facts. (§ 1.14.070, subd. F.)

Finally, when the board issues an administrative order finding an uncorrected violation, the aggrieved person "may obtain review of the administrative order in the superior court" through a petition for administrative mandate. (§ 1.14.120; see Code Civ. Proc., § 1094.5.)

## C. Adequacy and Availability of an Administrative Remedy

 Under the Code provisions cited above, a nuisance abatement compliance order issued by the director is not necessarily the final administrative

---

[6] Section 1.14.020 defines " 'director' " as "the head of any city department which is charged with responsibility for enforcement of any provision of [the Code]."

determination concerning whether there was a violation of the Code—i.e., a nuisance—and whether the person charged with the violation failed to comply with the order and correct it. Under certain circumstances, an administrative board will conduct a hearing, review the compliance order, and make a determination on those issues that is final and thereafter subject to judicial review. However, the person who receives a compliance notice cannot challenge it immediately by seeking an administrative review hearing. Only the director can initiate a hearing. Thus, if a person disagrees with the order, he or she cannot comply under protest and then initiate an administrative review. The person must take a risk of noncompliance and then wait for the director to initiate a hearing. Then, and only then, can the person administratively challenge the order and seek to have it rescinded.[7]

Clearly, if a person receives an order, refuses to comply, receives notice of a hearing, fails to attend the hearing, and then seeks judicial review of the compliance order, the Doctrine would apply and bar judicial review. Indeed, the Code expressly advises that the failure to attend the hearing constitutes a failure to exhaust administrative remedies.

In this case, the landlords, who received their own orders, in effect, complied with them and abated the nuisance by proceeding to evict petitioners from the leased premises where the alleged nuisances existed. Presumably for this reason the director did not initiate a hearing at which petitioners could have challenged the compliance orders. Moreover, as noted, petitioners could not directly and immediately initiate an administrative hearing on their own regardless of whether they complied with the order. Simply put, therefore, administrative review before the board was not a remedy that petitioners could have pursued for relief. In our view, the administrative review procedure under the Code constituted an illusory remedy for petitioners.

There is settled authority for the proposition that "[t]he exhaustion requirement is not applicable where an effective administrative remedy is wholly lacking." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 336, p. 436; see, e.g., *Rosenfield v. Malcolm* (1967) 65 Cal.2d 559, 566 [55 Cal.Rptr. 505, 421 P.2d 697] [doctrine inapplicable where agency had supervisory authority but there were no procedures for an appeal]; *Henry George School of Social Science v. San Diego Unified School Dist.* (1960) 183 Cal.App.2d 82 [6 Cal.Rptr. 661] [same, where there was no remedy or procedure authorized

---

[7] The Code does not expressly bar the director from initiating a review hearing where a person complies with an order under protest. However, as a practical matter, we doubt that hearings would be initiated under those circumstances.

that could have been pursued]; *Martino v. Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255] [same, where an appeal to executive committee was possible but there were no procedures for a hearing or determination of the appeal].)

Pertinent here is *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717] (*Eye Dog Foundation*). There, the foundation operated a school that trained guide dogs for the blind and sought declaratory relief concerning the constitutionality of statutes regulating guide dogs and in particular a statute that provided for automatic revocation of a school's license if it lacked a licensed trainer. The state claimed the action was barred by the Doctrine. In rejecting this claim, the court noted that the foundation could not have asserted its constitutional claims and sought relief in an administrative procedure because it could not initiate that procedure; only the Attorney General could do so by filing an accusation. The court further noted that when the foundation filed its action for declaratory relief, the Attorney General had only commenced an investigation and it was pending but had not filed an accusation. Although the Attorney General did later file an accusation, the court nevertheless held that the foundation was not required to exhaust the administrative process. (*Id.* at pp. 543–544.)

██ In this case, as in *Eye Dog Foundation*, the petitioners could not have initiated the administrative review that they allegedly were required to exhaust, and the party authorized to do so—the director—did not do so before petitioners sought judicial relief. Moreover, unlike the Attorney General in *Eye Dog Foundation*, the director here never initiated the administrative review procedure that petitioners could then have exhausted before seeking judicial relief.

Under the circumstances, we will not credit the Department's claim that the Doctrine applies because petitioners failed to demonstrate "that the administrative process was fully exhausted, i.e., that a hearing before the board occurred, and that the board made a decision and issued an administrative order." This claim overlooks the fact that petitioners could not initiate the administrative process to challenge the validity of the compliance orders; and the director never initiated that process.

The Department's reliance on *Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503 [59 Cal.Rptr.3d 100] and *Newhall County, supra*, 161 Cal.App.4th 1464 is misplaced. In both cases, the

Doctrine applied because a party sought judicial review of an administrative decision before pursuing an administrative review procedure that was readily available and adequate to provide the relief. No such procedure was available to petitioners in this case.

■ Finally, we note that where, as here, an administrative procedure to review compliance notices exists but cannot be initiated by a party receiving such a notice, and where, as here, the person who can initiate the administrative process does not do so, application of the Doctrine would not serve any of the policies it was intended to promote: it would not bolster administrative autonomy; permit the administrative review board to resolve factual issues, apply its expertise, and exercise statutorily delegated remedies; mitigate damages; or promote judicial economy. (See *Grant v. Comp USA, Inc., supra,* 109 Cal.App.4th at p. 644.) On the other hand, applying the Doctrine here would allow the director to issue nuisance abatement notices prohibiting activity by a lessee and then insulate the notices from administrative and judicial review by obtaining the lessor's compliance with the abatement order. We do not believe the Doctrine was designed or intended to shield administrative actions from any review.

### D. Other Findings

The superior court also denied the petition on the grounds of lack of ripeness and failure to show irreparable harm. These grounds are related to the Doctrine but, as we shall explain, do not provide alternative bases to uphold denial.[8]

### 1. Ripeness (or Finality)

■ The Doctrine " 'precludes [judicial] review of an intermediate or interlocutory action of an administrative agency.' " (*Coachella Valley, supra,* 35 Cal.4th 1072, 1081.) A court may review only a decision by the *final* administrative decision maker. (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d 280, 291 ["Until that administrative procedure has been invoked and completed, there is nothing that the District Court of Appeal or any other court may review; it cannot interfere in the intermediate stages of the proceeding."]; *McAllister v. County of Monterey, supra,* 147 Cal.App.4th 253, 284–285.)

---

[8] The parties do not discuss the superior court's findings concerning ripeness and irreparable harm.

" 'A decision attains the requisite administrative finality when the agency has exhausted its jurisdiction and possesses "no further power to reconsider or rehear the claim.' " [Citation.] Finality may be defined either expressly in the statutes governing the administrative process or it may be determined from the framework in the statutory scheme. [Citation.] Until a public agency makes a final decision, the matter is not ripe for judicial review." (*Newhall County, supra*, 161 Cal.App.4th 1464, 1485.) "The doctrine of exhaustion of administrative remedies is a closely related concept to finality. The policy reasons behind the two doctrines are similar. The exhaustion doctrine precludes review of an intermediate or interlocutory action of an administrative agency. [Citation.] A party must proceed through the full administrative process 'to a final decision on the merits.' [Citation.] Each step in the administrative proceeding cannot be reviewed separately, any more than each ruling in the trial of a civil action may be separately reviewed by a separate appeal. Administrative proceedings should be completed before the issuance of a judicial writ. The rule is not a matter of discretion; compliance is a jurisdictional prerequisite to judicial review." (*Id.* at p. 1489.)

■ Because the board, under certain circumstances, must review a compliance order and determine whether there is a violation of the Code that constitutes a public nuisance, the director's decision to issue a compliance order is not necessarily a final administrative determination that there is a violation. However, because petitioners' landlords effectively complied with the director's orders, they preempted any action that petitioners could have taken that might have caused the director to initiate a review hearing, and the director did not do so. Under these circumstances, the director's decisions in effect became final for purposes of judicial review.

## 2. Irreparable Harm

As noted, an exception to the Doctrine also exists "where irreparable harm will result if judicial intervention is withheld until a final administrative decision is rendered." (*Newhall County, supra*, 161 Cal.App.4th at p. 1490.)

Whether petitioners failed to establish irreparable harm is irrelevant because, as discussed above, the administrative remedy that they allegedly were required to pursue was illusory, unavailable, and inadequate.

## V. Disposition

The judgment is reversed.[9]

Premo, J., and Duffy, J.,[*] concurred.

On December 21, 2011, the opinion was modified to read as printed above.

---

[9] Given our disposition, we consider it unnecessary to address petitioners' claim that the court abused its discretion in denying their application for a stay pending a determination on the merits of the petition.

We observe that some of the relief sought in the petition—e.g., rescission of the compliance notices to petitioners—appears to be moot. The parties did not discuss or raise this issue, and therefore we express no opinion on that issue.

[*] Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.