Filed 8/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD FOX EMMONS, JR., <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> TOBIAS JESSO, JR., <br><br> Defendant, Cross-complainant and Respondent. | B332538 <br><br> (Los Angeles County Super. Ct. No. 19STCV21378) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Affirmed.

    Law Offices of Raymond Hovsepian, Raymond Hovsepian and Gary Simonian for Plaintiff, Cross-defendant and Appellant.

    Citron & Citron, Thomas H. Citron and Katherine A. Tatikian for Defendant, Cross-complainant and Respondent.

\* \* \* \* \* \*

Richard Fox Emmons, Jr. (tenant), appeals from a judgment following a jury trial in this action tenant filed against Tobias Jesso, Jr. (landlord), to recover rent payments on a unit tenant claimed was illegal.  The jury found against tenant and in favor of landlord in the amount of $14,700 plus interest and costs on landlord's cross-complaint for rent not paid.  We find no error and affirm the judgment.

## FACTUAL BACKGROUND

In April 2015, tenant entered into a written lease agreement for the lower level of 2500 Lake View Avenue for $1,000 per month.  In 2016, landlord purchased the property.

Landlord inspected the property prior to the purchase.  The property consisted of two structures.  The unit on the top two floors of the main building was occupied by a renter who was moving out.  Tenant was renting the main building's bottom floor unit.  Another renter resided in the separate cottage with the address 2502 Lake View Avenue.  Landlord's real estate agent assured him "everything was legal," and the two renters were legally on the property.  Following some renovations, landlord moved into the unit on the top two stories of the main building in July or August 2016.

After purchasing the property, landlord complied with tenant's requests to finish the floors, remove carpet, and fix the living room ceiling.

In February 2018, landlord approached tenant asking him to vacate the property.  Landlord informed tenant he and his wife were planning on starting a family and wanted to claim the first floor unit for owner occupancy.  Landlord offered tenant $7,000 and three months rent-free to move out rather than just evicting

2

tenant. In response, tenant put a threatening letter on landlord's door, indicating landlord would be sued for harassment. Landlord thereafter avoided trying to work things out with tenant. The letter also claimed landlord was liable for $115,000 in back rent.

In February 2018, Los Angeles Housing Department (LAHD) received a complaint concerning the property.[1] During a March 6, 2018 site inspection, no violations were noted. The case was closed on March 9, 2018.

In March 2018, landlord received an order from the city saying the unit he was renting to tenant was illegal. Landlord believed the order resulted from a complaint filed by tenant or tenant's lawyer. Landlord went to the Los Angeles Department of Building and Safety (LADBS) to correct the mistake, bringing paperwork, which the LADBS reviewed with him. After landlord provided the building permit, certificate of occupancy and other necessary paperwork, LADBS rescinded the order on June 6, 2018. However, based on the order, tenant refused to move out and stopped paying rent.

In May 2018, landlord received a notice from LAHD indicating the property was subject to the rent stabilization ordinance (RSO). LAHD had reviewed a complaint regarding failure to post "RSO Notice." Tenant received a courtesy copy. The letter also noted LADBS had issued a "Substandard Order and Notice of Fee," effective April 30, 2018. The violations cited in the order included illegal occupancy of the lower unit. The letter provided a procedure the landlord must follow to evict a

---

[1] LAHD is also known as Los Angeles Housing and Community Investment Department. We refer to the agency as LAHD, as do the parties.

tenant to comply with a government order. Tenant understood the letter relieved him from paying rent, so he declined to pay rent. However, documents entered into evidence at trial, including City of Los Angeles Statements of Registration of Rental Units for 2500 Lake View Avenue, which were issued pursuant to the RSO, reflected registration payments made by landlord from 2016–2020 for two rental units in the duplex located at 2500 Lake View Avenue.

On February 15, 2019, landlord sent tenant a letter asking tenant to vacate the property within 60 days. Tenant failed to vacate. On April 10, 2019, landlord presented tenant with a three-day notice to pay rent or quit. Tenant failed to pay rent or quit the premises within three days of that notice. On April 19, 2019, landlord sent tenant another three-day notice to pay rent or quit. Tenant again refused to comply. Tenant lodged another complaint with the LAHD Code Enforcement Division on April 23, 2019, which was closed immediately.

On May 8, 2019, LAHD served a notice and order to comply to landlord, citing unapproved units, illegal construction, and unapproved use or occupancy. On June 13, 2019, the compliance date, the complaint was closed with no violations resolved.

On May 22, 2019, landlord served tenant with a "Declaration of Intent to Evict in Order to Comply with a Government Agency's Order." On June 12, 2019, landlord filed a "Relocation Services OR Demolition Monitoring Services Application." Landlord checked as the reason for his application, "Eviction for compliance with a government agency order."

On July 2, 2019, landlord sent his first check in the amount of $21,200 to tenant's lawyer for relocation expenses. Tenant's lawyer insisted he never received it. Landlord was not permitted

4

to evict tenant based on "no relocation payment being cashed." Landlord had to refile for eviction.

At trial Tyler Coleman, an inspector for LAHD, testified he inspected the property in connection with a May 8, 2019 notice and order to comply sent to landlord, with a compliance date of June 14, 2019. The reinspection date for the property was June 24, 2019. The inspector testified LAHD is separate from LADBS, and the LAHD case was closed because the tenant was no longer there.[2] The inspector admitted the certificate of occupancy for the property identified two separate structures— one which was converted to a duplex, and a separate single-family residence. At trial, Coleman reviewed the complaint filed with LAHD asserting the 2500 Lake View Avenue property was illegal. He could see the property owner came in and spoke with an inspector, and the case was closed. Coleman reviewed annual bills for the RSO, which established landlord paid a separate RSO fee for each of the two units located at 2500 Lake View Avenue, which Coleman acknowledged was the duplex, during the years at issue in this case.

Brian Hauff, the regional manager and former inspector for LADBS, also testified the building containing tenant's unit was an approved duplex. Hauff testified in April 2018 a "substandard order" was issued regarding landlord's property. On May 30, 2018, landlord came to the counter and provided a permit proving the three-story building was a legal duplex. LADBS provided, "Inspector will verify compliance with inspector and case be [*sic*]

---

[2] Coleman's testimony reveals the LAHD order was closed in September of 2019, which would have been after tenant moved out.

closed." Tenant testified he knew for "several years" the LADBS notice deeming his property illegal was issued in error.

Eventually tenant cashed landlord's second check for $21,200. Tenant moved out on September 3, 2019. Tenant had not paid the $1,050 monthly rent in 14 months.

## PROCEDURAL HISTORY

Tenant filed his complaint on June 17, 2019, alleging (1) violation of statute (Civ. Code, § 1942.4), (2) restitution based on unjust enrichment, (3) violation of Business and Professions Code section 17200, (4) money had and received, (5) damages for breach of contract, (6) damages for fraud and deceit, (7) violation of Los Angeles RSO, and (8) damages for breach of implied warranty of habitability.

On January 16, 2020, the trial court overruled landlord's demurrer and denied his motion to strike. On February 19, 2020, landlord filed his answer and a cross-complaint, alleging causes of action for (1) unjust enrichment, (2) indemnity, and (3) declaratory relief.

On March 11, 2020, landlord filed a first amended cross-complaint alleging (1) unjust enrichment, (2) breach of contract, (3) negligence, (4) fraud, (5) public nuisance, and (6) private nuisance. On July 9, 2020, the trial court overruled tenant's demurrer and denied his motion to strike. Tenant filed his answer to the first amended cross-complaint on July 23, 2020.

The jury trial commenced on April 21, 2023, and lasted six days. Tenant proceeded on a single cause of action for violation of the Municipal Code, and landlord proceeded on a single cross-claim for breach of contract. On April 27, 2023, the court gave its final instructions to the jury. The jurors began deliberating on

the morning of April 28, 2023. On the same day, the jurors reached a unanimous verdict in landlord's favor on tenant's claim for violation of the Municipal Code, and in landlord's favor on his cross-claim against tenant for breach of contract. The jury awarded nothing to tenant and awarded $14,700 in favor of landlord against tenant, with interest and costs to be determined by the court.

On June 1, 2023, tenant filed a motion for judgment notwithstanding the verdict (JNOV) and a notice of intention to move for new trial. The trial court denied both motions on July 31, 2023. The notice of entry of order was filed and served on July 31, 2023, and tenant filed his notice of appeal on August 25, 2023.

## DISCUSSION

### I. Determination of legality of dwelling was properly before the jury

Tenant first argues the trial court erred as a matter of law by allowing the jury to determine whether the dwelling tenant was renting was legal. Tenant cites *Carter v. Cohen* (2010) 188 Cal.App.4th 1038 (*Carter*) as support for this argument. In *Carter*, a tenant sued a landlord for disgorgement of the rent she had paid in excess of RSO limits. (*Id.* at p. 1043.) A jury determined the tenant was entitled to excess rent payments of $11,590. The tenant subsequently sought her attorney fees and trebling of the jury award pursuant to Los Angeles Municipal Code section 151.10, subdivision A. The trial court awarded Carter $25,575 in attorney fees, but declined to treble the jury's award; in addition, the trial court awarded $5,427.01 in other costs. (*Carter*, at p. 1043.) The landlord appealed, arguing the

7

guesthouse he rented to the tenant was not covered by the RSO. The *Carter* court specified, "The key issue before us is whether the trial court erred in concluding that [the landlord] was subject to the RSO's prohibition against the collection of excessive rent. At the outset, we note the narrow scope of our inquiry." (*Id.* at p. 1046.) The court concluded although the unit was built without permits, lacked a certificate of occupancy, and was unregistered under the RSO, these facts did not preclude the tenant from recovery under the RSO. (*Id.* at p. 1047.)

In this matter, landlord has never disputed that tenant's unit was subject to the RSO. Landlord paid registration fees in accordance with the RSO throughout tenant's tenancy. Contrary to tenant's position, *Carter* does not suggest it is improper for a trial court to permit a jury to determine the legality of a rental unit. In *Carter*, there was no factual question as to whether the unit at issue was legal or not. The landlord admitted he knew the property was built without permits and did not comply with the building code. (*Carter, supra*, 188 Cal.App.4th at p. 1045.) As set forth above, the only issue before the *Carter* court was whether the trial court properly determined the unit was subject to the provisions of the RSO. The case is unhelpful to tenant. Tenant cites no law suggesting it is improper for a court to allow a jury to determine whether a property is illegal when this is a contested factual issue in the case.

Tenant cites portions of his trial brief where he argued landlord was prevented from denying the illegality of the unit on the grounds of estoppel, waiver, and failure to exhaust administrative remedies. The existence of estoppel is generally a factual question (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 565), as is waiver

8

(*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598).

The court gave tenant's proposed special instruction No. P-1, which read: "[Tenant] contends in this action that he is entitled to recover from [landlord] all rental payments because [tenant]'s unit was illegal. [¶] If [tenant] establishes by a preponderance of the evidence that during his occupancy, the premises he occupied was illegal, [tenant] is entitled to recover all sums which he paid to [landlord] as rent." The instruction required the jury to determine whether the unit was legal based on the evidence presented.

The court informed the jury the parties had competing positions on the issue of the legality of tenant's unit. The jury heard testimony from the parties and government employees, including employees of LADBS and LAHD, involving the question of whether tenant's unit was illegal. A jury may properly determine whether a landlord has violated the law. (See, e.g., *Reynolds v. Lau* (2019) 39 Cal.App.5th 953, 960.) Tenant has provided no law supporting his position that it was improper for the jury to resolve this contested factual issue. As such, tenant has failed to meet his burden on appeal, and we decline to disturb the jury verdict.

## II. Use of LADBS testimony to challenge LAHD determination of status was proper

Tenant makes a complex argument concerning the trial court's decision to allow LADBS testimony for the purpose of refuting the LAHD's initial determination that the unit was illegal. First, we note tenant has failed to provide a citation to the record showing he objected to such testimony or provided the trial court any opportunity to consider this point. As such, the

9

issue is forfeited.  (*People v. Partida* (2005) 37 Cal.4th 428, 434 ["What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling."], citing Evid. Code, § 353, subd. (a).)

Nevertheless, we summarize tenant's argument as follows: landlord failed to exhaust his administrative remedies in that he declined to appeal the LAHD's initial determination that tenant's unit was illegal.  Admission or consideration of evidence from LADBS to bypass the administrative appeal process, and use of the LADBS evidence to vitiate the LAHD's determination that the property was illegal, was improper.  Tenant argues the trial court abdicated its role by charging the jury with determining the legality of the unit when two city agencies offered potentially differing outcomes.  Tenant thus appears to be arguing the trial court erred by allowing landlord to introduce evidence from LADBS at all, where landlord failed to appeal LAHD's initial determination the property was illegal.  Tenant provides no authority for this argument, other than general authority requiring exhaustion of administrative remedies.

The evidence shows the city agencies closed each case regarding complaints concerning tenant's unit.  Tenant cites no authority suggesting landlord was required to appeal the LAHD decision under the circumstances of this case, where the complaint was closed and no violations were noted.[3]  In fact,

---

[3]     Tenant emphasizes the LAHD complaint was closed after tenant moved out.  However, evidence in the record permitted the

because landlord was not aggrieved by the LAHD's decision to close the complaint with no violations noted, landlord was not an aggrieved person with standing to appeal the LAHD decision. (*SJCBC LLC v. Horwedel* (2011) 201 Cal.App.4th 339, 347.)

Further, tenant invited any error with respect to the admission of LADBS testimony by failing to object and consenting to submission of the issue to the jury. During a discussion of jury instructions, tenant proposed an instruction suggesting landlord gave up his right to ask for unpaid rent by failing to challenge the LAHD order. After receiving a general instruction on the doctrine of waiver, the jury was instructed on tenant's requested special instruction regarding failure to exhaust administrative remedies, which provided, "[Tenant] contends the Defendant prevented [*sic*] denying the validity of the May 15 notice of order brought by the Housing District and that he also prevented them from denying the determination made in the notice and order to comply because he did not seek the final decision from the Housing Department." The jury, which was presented with evidence from both LAHD and LADBS on the issue, was duly instructed on tenant's theory of waiver. The jury's finding that landlord's failure to seek a further decision from LAHD did not prevent landlord from denying the initial determination of LAHD is fully supported by the evidence, including evidence that the LAHD investigation was closed without any necessary remediations.

The trial court did not err in permitting testimony from LADBS suggesting the property was a legal rental. Tenant failed

---

jury to determine the unit was legal, and tenant repeatedly filed complaints with the intention of undermining landlord's attempts to evict tenant.

to object to the testimony, which, along with other evidence in the case, overwhelmingly indicated the legal status of tenant's unit. All complaints were closed with no violations noted, thus an appeal of the LAHD's initial determination of illegality was unnecessary. Tenant's argument has no merit.

## III. Landlord's notice of intent to evict tenant to comply with LAHD order

Tenant's next arguments are based on the May 2019 "Declaration of Intent to Evict in Order to Comply with a Government Agency's Order," which landlord served on tenant in an effort to evict tenant. In sum, tenant argues landlord waived the right to argue his unit was legal, or was estopped from arguing his unit was legal, due to landlord's reliance on the purported illegality of the unit to attempt to evict tenant. We discuss each issue separately below.

### A. *No waiver by landlord*

Tenant argues the trial court committed prejudicial error by failing to determine as a matter of law that landlord waived his right to challenge the LAHD's initial determination that the dwelling was illegal. Tenant admits the general rule is the determination of waiver is a question of fact. However, tenant argues, when the facts are undisputed and only one inference may reasonably be drawn, the issue becomes one of law. Tenant argues the undisputed facts demonstrate landlord waived his right to challenge the LAHD's determination the property was illegal by complying with the LAHD's order that landlord evict the tenant.

The undisputed facts show landlord executed a declaration stating his intent to evict tenant in order to comply with the LAHD's notice and order to comply. The form indicated tenant's

12

unit was an "[i]llegal [c]onversion." Landlord testified he signed the declaration of intent to evict to comply with a governmental agency order. Landlord understood he was required to pay a relocation fee, and he signed the form to comply with that requirement. Because landlord signed these forms and paid the relocation fee, tenant argues, the court should have determined landlord waived his right to challenge LAHD's determination that tenant's unit was illegal. If landlord was going to take the position that the dwelling was legal, tenant argues, he should have challenged LAHD's determination of illegality in an administrative hearing.

Again, we note tenant has failed to point to a citation in the record showing tenant objected to allowing the jury to determine the issues of waiver and estoppel based on landlord's use of a notice of intent to evict to comply with LAHD's notice and order. During trial, tenant's attorney raised no objection this was a fact question for the jury. When discussing jury instructions, tenant's attorney stated, "[The jurors] can decide whether my client or whether [landlord] waived by not seeking—"; the court interrupted, "That's a factual question." Tenant's attorney agreed, "That is a factual question." Tenant's attorney requested special instructions, which the trial court gave, regarding both waiver and estoppel. Because tenant failed to fairly inform the trial court of his position at trial, and invited the purported error he complains of here, tenant has forfeited this argument on appeal. (*People v. Partida, supra*, 37 Cal.4th at p. 434.)

Further, in making this argument, tenant disingenuously ignores the competing facts presented to the jury. Landlord was required to comply with the LAHD notice and order. However, the jury heard from city agencies and viewed documents showing

13

it was later determined the property was not illegal. In addition, tenant provided conflicting testimony as to his understanding of whether the unit was legal or illegal. The facts surrounding the circumstances of landlord's compliance with LAHD's notice and order, the legality of tenant's unit, and the ultimate question of whether landlord waived his right to challenge LAHD's initial determination, were disputed factual issues the jury properly decided based on all of the evidence presented at trial.

Given tenant's forfeiture of this issue, and the complex factual background, the trial court did not err in failing to determine the question of waiver as a matter of law.

### B. *No error involving the doctrine of estoppel*

Tenant makes a similar argument citing the doctrine of estoppel, arguing the trial court erred in allowing landlord to argue the dwelling was legal after landlord acted upon the LAHD's notice and order that the dwelling was illegal, in an attempt to evict tenant. Tenant argues the trial court should have determined as a matter of law that landlord was estopped from arguing that the dwelling was legal.

The doctrine of estoppel applies where (1) the party to be estopped is apprised of the facts; (2) he intends that his conduct shall be acted upon, or acts in a manner such that the party asserting the estoppel had a right to believe it was so intended; (3) the other party is ignorant of the true state of facts; and (4) relies on the conduct to his injury. (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488–489.) Equitable estoppel may be found when "(1) [t]he party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3) equitable considerations warrant the conclusion that the first party should

14

not be permitted to exploit the disadvantage he has thus inflicted upon the second party." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 488.) "Reliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances." (*Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 655.) Estoppel involves factual issues that must be decided by a jury. (See, e.g., *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 159; *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 44.)[4]

Tenant fails to point to a citation to the record where tenant requested the trial court to determine the issue of estoppel as a matter of law. As such, the issue is forfeited on appeal. (*People v. Partida, supra*, 37 Cal.4th at p. 434.)

Further, as set forth above, the question of estoppel involves the resolution of several factual components, which were highly contested in this case. Accordingly, tenant proposed, and the trial court gave, a special instruction to the jury on the doctrine of estoppel. Tenant's attorney referenced this precise estoppel argument in his closing comments to the jury, explaining "one of the important elements in the rest of that [estoppel] instruction is when the other party has relied on it, meaning [tenant]. [Tenant] is claiming that [landlord] is

---

[4] Contrary to tenant's assertion, *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54 does not stand for the proposition that a trial court must determine estoppel as a matter of law. In that case, the court declined to make a ruling as to the estoppel issue entirely, stating the jury's determination rendered such a finding unnecessary. (*Id.* at p. 58.) Because waiver and estoppel are distinct doctrines, the trial court erred in declining to rule on the estoppel issue. (*Id.* at p. 61.)

estopped or prevented from claiming the property was legal because he signed the declaration and went down the path of eviction on the basis that the property was illegal."

Given tenant's forfeiture of this issue and the complex factual issues surrounding the question of estoppel here, the trial court did not err in failing to determine the question of estoppel as a matter of law.

## IV. Tenant's JNOV motion

In his JNOV motion, tenant asked the trial court to disregard the jury verdict in part because there was no evidence in the record landlord posted or delivered to tenant proof the dwelling rented to tenant was registered with the housing department, as required by the RSO. In support of this argument, tenant cited Los Angeles Municipal Code section 151.05, subdivision A, which provides: "On or after July, 1979, no landlord shall demand or accept rent for a rental unit without first procuring and serving on the tenant or displaying in a conspicuous place a valid written registration statement from the Department or its designee. On or after April 30, 1983, no landlord shall demand or accept rent for a rental unit without first serving a copy of a valid registration or annual registration renewal statement on the tenant of that rental unit." Tenant argues Los Angeles Municipal Code section 151.05, subdivision A is a condition precedent to a landlord's ability to demand or accept rent. There was no evidence at all that landlord complied with Los Angeles Municipal Code section 151.05, subdivision A. Landlord was prohibited from demanding or accepting rent until he complied with Los Angeles Municipal Code section 151.05, subdivision A. Tenant argues the trial court erred by failing to properly interpret the ordinance to the undisputed facts at trial,

16

and should have entered judgment in favor of tenant on landlord's cross-complaint for rent.

The standard a trial court must adhere to in reviewing a JNOV motion is whether "it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support [of the verdict]." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) Thus, the issue before the trial court was whether the jury verdict was supported by the evidence. "'"The trial court's discretion in granting a motion for judgment notwithstanding the verdict is severely limited."'" (*In re Coordinated Latex Glove Litigation* (2002) 99 Cal.App.4th 594, 606.)

We note tenant did not clearly present this issue as a basis for liability in his complaint or as an affirmative defense to landlord's cross-compliant. Tenant's complaint makes no reference to Los Angeles Municipal Code section 151.05, subdivision A. Nor does it contain any allegations that landlord failed to serve tenant with, or post, an RSO registration statement.[5] Similarly, neither tenant's trial brief nor first amended trial brief refers to Los Angeles Municipal Code section 151.05. Neither includes any allegations that landlord failed to post or serve tenant with an RSO registration statement. Tenant fails to provide a citation to the record showing tenant asked the trial court to instruct the jury as to any theory of noncompliance with Los Angeles Municipal Code section 151.05. Nor does tenant provide a citation to the record showing tenant asked the

---

[5] Tenant's allegations regarding violation of the RSO in his complaint involve his allegations that landlord failed to pay or tender relocation fees, as required by the RSO.

17

trial court to determine, as a matter of law, whether landlord complied with this Municipal Code section.

Despite tenant's failure to clearly present this theory at trial, the evidence supports a jury verdict in favor of landlord as to compliance with the RSO registration requirement. Tenant testified he received a courtesy copy of a document stating LAHD had received a complaint regarding failure to post an RSO notice. Tenant testified nothing was ever posted indicating his unit was registered under the RSO. However, the evidence at trial included City of Los Angeles Statements of Registration of Rental Units for 2500 Lake View Avenue, issued pursuant to the RSO and reflecting payments from 2016 through 2020 for two rental units in the duplex located at 2500 Lake View Avenue. Thus, the jury was entitled to disregard tenant's testimony and find that landlord had a valid registration for tenant's unit in this matter.

In its minute order denying tenant's JNOV motion, the trial court referred to Los Angeles Municipal Code section 151.11, subdivision B, which provides that once the landlord has complied with Los Angeles Municipal Code section 151.05, subdivision A, the tenant becomes obligated to pay the rent and any back rent withheld. The court correctly noted "the cited [Los Angeles Municipal Code] sections do not expressly address rent being determined by a jury, under the unique facts of this case." Further, the court noted, "The sections provide for tenant's delaying of rent, but not avoiding it permanently, and hence the jury properly determined rent." The court did not err in concluding a tenant is required to deliver back rent upon

18

procurement of the registration.[6]  As set forth above, the evidence supported the jury's determination that landlord had such a valid registration for tenant's unit in this matter.

The evidence supported the jury's verdict in favor of landlord for past rent withheld by tenant on the theories advanced by tenant at trial.  For this reason, tenant's JNOV motion was properly denied.

## DISPOSITION

The judgment is affirmed.  Defendant, cross-complainant and respondent is awarded his costs of appeal.


CHAVEZ, J.


We concur:


LUI, P. J.


ASHMANN-GERST, J.

---

[6]      Los Angeles Municipal Code section 151.11, subdivision B provides: "A tenant may withhold the payment of any rent otherwise lawfully due and owing after July 1, 1979, until such time as the landlord has complied with Section 151.04 C. and Section 151.05 A. of this Chapter.  Once the landlord has complied with Sections 151.04 C. and 151.05 A. of this Chapter, the tenant becomes obligated to pay the current rent and any back rent withheld pursuant to this Subsection."