Filed 5/13/26  Doe v. Irvine Unified School Dist. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>IRVINE UNIFIED SCHOOL DISTRICT,<br>    Defendant and Appellant. | G064369<br><br>(Super. Ct. No.<br> 30-2023-01343821)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Parcells Law Firm, Dayton B. Parcells III, and Ben Mehdian for Plaintiff and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo and Scott D. Danforth, for Defendant and Appellant.

This case arises from Jane Doe's alleged violations of the Irvine Unified School District's (School District) academic honesty policy. Based on Doe's actions, the School District removed Doe from her math class, changed her grade to a "withdraw fail," and noted academic violations on her record. Doe submitted her First Amended Petition for Writ of Mandate (FAP) demanding, among other things, that the School District remove a negative notation about a March 2023 incident from her record and restore her math grade. The trial court granted Doe's request to remove the negative notation from her record and reinstate her A- grade.

On appeal, the School District contends the trial court erred in: (1) determining Doe had attempted to exhaust her administrative remedies and was thus excused from exhausting them; (2) allowing Doe's case to proceed under Code of Civil Procedure, section 1085 instead of section 1094.5; and (3) granting Doe's request to remove the negative notation from her record and to restore her math grade. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 2023, Doe was in the seventh grade and in Liz Gastelum's Math 7/8 class. On the day Gastelum had scheduled a chapter six test, she observed Doe walking into class holding a piece of paper with a circled number on the back. Gastelum recognized the number was an answer to a test question she had been correcting during the prior period. When Gastelum asked Doe what the papers were, Doe explained they were practice problems her mother had given her. Doe went to her seat, and Gastelum passed out the chapter six test to all the students in the class. Gastelum then

---

[1]        We limit our recitation of the facts to those relevant to the issues on appeal.

immediately went to her answer key and confirmed the number circled on the back of Doe's paper was an answer to a test question. Doe had just started the test when Gastelum told Doe to grab the papers she was holding when she walked into the class and meet Gastelum outside the classroom.

Once outside the classroom, Gastelum again asked Doe where she got the practice problems. Doe explained she received them from a tutor. According to Gastelum, Doe admitted she knew the practice problems were test questions. When Gastelum asked how the tutor had her tests, Doe said the tutor had pictures of all her tests. Doe also said she had access to questions from chapters three through six and had worked on the problems prior to the tests. Gastelum took the papers from Doe and called an administrator. When the administrator arrived, Doe told him the same information she had provided to Gastelum. Specifically, she confirmed she had actual test questions in her possession and had worked on and used them to prepare for the test. Based on this incident, the School District dropped Doe from Math 7/8, replaced her grade with a "withdraw fail," and placed her in Math 7. The School District also noted the academic violation on Doe's record.

In April 2023, Doe's counsel sent a general complaint to the School District demanding, among other things, that the School District reverse its decision to change Doe's grade to a "withdraw fail" and remove the March 2023 academic violation notation from Doe's record. About a week later, the School District responded, advising that Doe had two options. First, Doe could file a complaint utilizing the Uniform Complaint Process ("UCP") in accordance with California Code of Regulations, title 5, section 4621. Second, Doe could file a complaint under Education Code § 49070, which

outlines a procedure for filing challenges to the content in pupil records. One week later, Doe filed a complaint pursuant to the UCP again asking for the School District to change Doe's grade and to remove the March 2023 academic violation from Doe's record.

Two months later, the School District responded to Doe's UCP with an investigation report. The School District explained it was upholding its decisions and denying Doe's demands. The School District further instructed Doe to appeal in writing to the California Department of Education within 30 days if she was dissatisfied with the School District's investigation report. Doe appealed the School District's decision by serving an appeal on the California Department of Education and the School District the following month.[2]

Because the California Department of Education did not issue a decision within 30 days and the new school year was starting, Doe filed her Petition for Writ of Mandate in August 2023. After the trial court sustained the School District's demurrer with leave to amend, Doe's counsel contacted the School District and demanded that it act upon Doe's appeal in accordance with Education Code, section 49070, i.e., schedule a session to determine whether to sustain or deny the allegations. (Ed. Code, § 49070, subd. (c).) The School District did not schedule a session, and Doe subsequently filed her FAP. Relevant to this appeal, Doe alleged she should be excused from

---

[2] Nine months later, in April 2024, the California Department of Education issued its findings and determined the School District had complied with its complaint procedures, the material findings of facts were supported by substantial evidence, and the legal conclusions were consistent with law. In sum, the California Department of Education denied Doe's appeal.

exhausting remedies under Education Code, section 49070, because the School District failed to schedule a session to determine whether to sustain or deny Doe's claims under that section.

The trial court accepted the parties' briefs on the FAP, heard argument, then took the matter under submission before issuing an initial statement of decision. After the parties each filed partial objections to the initial statement of decision, the court vacated the ruling and invited additional briefing. The court accepted additional briefing and granted a request for judicial notice of the California Department of Education's decision regarding Doe's UCP complaint. In May 2024, the court issued its amended ruling and statement of decision ordering the School District to remove the March 2023 negative notation from Doe's record and to reinstate Doe's math grade. The School District timely appealed.

DISCUSSION

I.

WHETHER PETITIONER FAILED TO EXHAUST ADMINISTRATIVE
REMEDIES UNDER EDUCATION CODE SECTION 49070

The School District first argues Doe failed to exhaust her administrative remedies because she appealed the School District's decision to the California Department of Education rather than the School District. [3]

_____

[3] The trial court ultimately did not make an express finding on whether Doe was excused from exhausting her administrative remedies. Because the court rendered judgment in Doe's favor, we rely on the doctrine of implied findings to infer that the court found that the exhaustion requirement was excused. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [explaining that the doctrine of implied findings "(1) directs the appellate court to presume that the trial court made all factual findings necessary to support the judgment so long as substantial evidence supports those findings and (2) applies unless the omissions and

A. *Standard of Review*

"We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case." (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873.)

B. *Applicable Law*

The doctrine of exhaustion of administrative remedies (the doctrine) "refers to the requirement that administrative remedies be pursued as a jurisdictional prerequisite to seeking judicial relief from an administrative action." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148.) "In general, a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.'" (*Coachella Valley Mosquito &Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) "This rule is not a matter of judicial discretion, but rather is a jurisdictional prerequisite." (*Roth v. City of Los Angeles* (1975) 53 Cal.App.3d 679, 686.) "Moreover, it applies whether relief is sought by a petition for traditional or administrative mandate." (*SJCBC, LLC v. Horwedel* (2011) 201 Cal.App.4th 339, 346 (*SJCBC*).) "'[E]xhaustion of administrative remedies furthers a number of important societal and governmental interests, including: (1) bolstering administrative autonomy; (2) permitting the agency to resolve factual issues, apply its expertise and exercise statutorily delegated remedies; (3) mitigating

_____

ambiguities in the statement of decision are brought to the attention of the superior court in a timely manner"].)

damages; and (4) promoting judicial economy.'" (*Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637, 644.)

"That said, however, the [d]octrine 'has not hardened into inflexible dogma.' [Citations.] It recognizes exceptions, for example, 'when the administrative remedy is unavailable, when it is inadequate, or when it would be futile to pursue it. [Citation.] Other exceptions include "situations where the agency indulges in unreasonable delay . . . , when the subject matter lies outside the administrative agency's jurisdiction, [or] when pursuit of an administrative remedy would result in irreparable harm. . . ."'" (*SJCBC, supra,* 201 Cal.App.4th at p. 346.)

C. *Analysis*

To determine whether the doctrine applied and precluded judicial relief in this case, we first examine the administrative remedy under the Code Doe allegedly should have pursued and exhausted before seeking writ of mandate. (*SJCBC, supra,* 201 Cal.App.4th at p. 347.)

"[Education Code] section 49070 delineates hearing procedures for a parent to challenge the content of a pupil's record. The statute specifically cites section 49066 [of the Ed. Code], prohibiting the superintendent or board from ordering a pupil's grade changed unless the teacher who determined such grade is provided an opportunity to state the reasons the grade was given and is included in all discussions relating to the changing of such grade. The board is required to conduct a closed session with the parent and teacher present, if a grade change is involved. The statute further provides that the board's decision is final. Finally, the board is required to maintain the records of 'these administrative proceedings,' and to destroy them after one year unless the parent initiates legal proceedings."

7

(*Eureka Teachers Assn. v. Board of Education* (1988) 199 Cal.App.3d 353, 362 (*Eureka*).)

Here, Doe has shown she would suffer irreparable harm if the administrative process, rather than the court action, were allowed to proceed. Doe filed her petition for writ of mandate on August 21, 2023, because her new school year was to start within a week on August 26, 2023, and her grade and placement, along with other factors, impacted her ability to enroll in the next school year's math class of her choice. Moreover, at that time, neither the School District nor the California Department of Education had responded to Doe's appeal or demand for an administrative hearing. The unique circumstances of this case lead us to conclude Doe was not required to exhaust her administrative remedies.

## II.
### WHETHER THE COURT ERRED IN PERMITTING THIS CASE TO MOVE FORWARD UNDER CODE OF CIVIL PROCEDURE, SECTION 1085

The School District next argues the trial court erred in allowing this case to move forward under ordinary mandate (Code of Civil Procedure, section 1085) rather than administrative mandate (Code of Civil Procedure, section 1094.5) because this case arises out of an administrative decision. We agree.

"Quasi-legislative actions are generally reviewed by a proceeding in ordinary or traditional mandate (Code Civ. Proc., § 1085), in which judicial review is confined to the question whether the classification is arbitrary, capricious, or without reasonable or rational basis." (*Save Civita, supra*, 72 Cal.App.5th at p. 984.) "Administrative mandamus (Code Civ. Proc., § 1094.5) is available only when 'by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in

8

the inferior tribunal, corporation, board, or officer . . . .'" (*Ibid.*; see also *Beach & Bluff Conservancy v. City of Solana Beach* (2018) 28 Cal.App.5th 244, 259 [determination whether Code Civ. Proc., §§ 1094.5 or 1085 applies does not depend on whether agency is required to hold evidentiary hearing, but instead turns on nature of challenged action; traditional mandamus under Code Civ. Proc., § 1085 applies to quasi-legislative decisions defined as those involving formulation of a rule to be applied to all future cases while administrative mandamus under Code Civ. Proc., § 1094.5 applies to quasi-judicial decisions which involve actual application of a rule to a specific set of facts].)

As noted above, the operative law, Education Code section 49070, requires the School District to conduct a closed session with the parent and teacher. (*Eureka, supra,* 199 Cal.App.3d at p. 362.) Doe was not excused from seeking a writ of mandate because the School District failed to conduct a closed session with Doe after she requested one. (*Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1729 [Code Civ. Proc., section "1094.5 expressly provides that it is the requirement of a hearing and taking of evidence—not whether a hearing is actually held and evidence actually taken—that triggers the availability of mandamus review].)

Where, as here, the parties proceeded under the wrong writ of mandate, we "determine whether the trial court considered the appropriate evidence and applied the appropriate standard of review, based upon the facts of the case." (*Eureka, supra,* 199 Cal.App.3d at p. 366.)

### III.

WHETHER UNDER CODE OF CIVIL PROCEDURE SECTION 1094.5, DOE'S PETITION HAS MET HER BURDEN, AND WHETHER THE COURT ERRED IN GRANTING ANY PORTION OF THE FAP

*A. Standard of Review*

A trial court may issue a writ of administrative mandamus where an agency has committed a prejudicial abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b).) Abuse of discretion is established if the findings of the agency are not supported by the evidence. (*Ibid.*) Where, as here, an administrative decision does not involve a fundamental vested right, "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c); *San Marcos Mobilehome Park Owners' Assn. v. City of San Marcos* (1987) 192 Cal. App.3d 1492, 1499–1500.) Review by writ of administrative mandate "is limited to the record compiled by the administrative agency, and the agency's findings of fact must be upheld if supported by 'substantial evidence.'" (*State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 977.) On substantial evidence review, "[w]e are required to accept all evidence which supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the [agency's decision]." (*Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1074.) "'Only if no reasonable person could reach the conclusion reached by the administrative agency, based on the entire record before it, will a court conclude that the agency's findings are not supported by substantial evidence.'" (*Id.* at p. 1073.)

*B.  Analysis*

According to the School District, Doe's actions specifically violated Administrative Regulation 5131.9, which provides "examples" of "possible violations." The School District points to three specific examples in reasoning Doe's actions amounted to an academic honesty violation: (1) cheating on tests; (2) unauthorized collaboration; and (3) Digital Citizenship Violations. Here, there is no substantial evidence that Does's actions, obtaining test questions from a tutor, fall into the examples of the School District's academic violations.

The School District describes "Cheating on Tests" as "[a]ny use of external assistance relating to an examination, test, or quiz without expressed permission of the teacher. This includes looking at another student's paper, sharing answers, possession of materials, or copying another student's paper." Here, there is no evidence that Doe looked at another student's paper, shared answers, or copied another student's paper. The only relevant part of the policy is "possession of materials." It is unclear from the rule which materials would violate it. Based on the School District's investigation report, however, Gastelum would allow students to take tests out of the classroom. There is no evidence Gastelum ever told students not to share the questions with anyone. Because Gastelum gave her students their tests back and did not bar them from using the old tests to study, it does not appear that possession of an old test would be considered "possession of materials" in violation of the academic honesty policy. Finally, there is nothing in the investigation report alleging Doe had prior tests in her possession. Rather, it appears from the record before us what Doe had was

her own notes where she had worked out problems that had previously been on tests.

Next, the School District defines "Unauthorized Collaboration" as "Collaboration on an assignment between a student and another person, if such collaboration is not expressly directed or permitted by the teacher. This includes copying another student's work, allowing work to be copied, or completing assignments for others, giving or 'passing' any assessments to other students for the following year, or receiving any assessments from other students." Here, there is no allegation Doe copied another student's work, allowed her work to be copied, completed an assignment for others, gave or passed any assessment to other students for the following year, or received any assessments from other students. Thus, the only possible relevant section of the regulation is that Doe collaborated with the tutor, and her collaboration was not permitted by Gastelum. The record, however, shows that another student had used the same tutor as Doe, and the school was aware of this. There is no indication the School District told students that seeking this specific tutor's services amounted to an academic violation. Nor is there any record of the School District disciplining the other student for going to the same tutor. To the extent that the regulation prohibits students from passing or receiving assessments, there is nothing in the record to indicate that Doe received test questions from another student. While it is unclear how the tutor obtained test questions, there is no evidence Doe was supplying the tutor with exam questions.

Finally, the School District "Digital Citizenship Violations" section requires students to "refrain from using technological resources for violations that involve academic dishonesty. These include using technology

12

to copy, plagiarize, collaborate inappropriately, sending or receiving test questions, accessing another's account, or hacking into computer systems." There is nothing in the record to indicate Doe used technology to obtain the test questions. Rather, it appears Gastelum's own practice, which she subsequently changed, is the reason the tutor had access to old test questions.

Based on the School District's policy and the evidence in its investigation report, its finding that Doe violated the academic policy in March 2023 was not supported by substantial evidence. Therefore, we find no abuse of discretion in the trial court's decision granting Doe's request to remove the negative notation from her record and to restore her math grade.

DISPOSITION

The judgment is affirmed. Doe shall recover her costs on appeal.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13